THE STATE OF OHIO, APPELLEE, *v.* RALSTON, APPELLANT.

[Cite as State v. Ralston (1979), 67 Ohio App. 2d 81.]

(No. 820—Decided November 7, 1979.)

*Mr. Robert A. Jones,* prosecuting attorney, and *Ms. Stephanie A. Wyler,* for appellee.

*Mr. J. Tullis Rogers, Mr. Warren M. Enders* and *Mr. Harry Reinhart,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal of the defendant-appellant, Larry M. Ralston, from the judgment of the Court of Common Pleas of Clermont County finding appellant guilty of aggravated murder.

We deal first with appellant's second assignment of error which asserts that:

"The trial court erred to the prejudice of defendant-appellant in finding that the State had presented sufficient evidence to show the *corpus delicti* of an aggravated murder prior to the admission in evidence of defendant-appellant's confession to that offense."

Appellant frames the issue under this assignment as follows:

"Where there had been no proof that the decedent's death resulted from a criminal agency the trial court erred in allowing the State to introduce in evidence the involuntary statements made by appellant."

Prior to introducing appellant's confession, the state introduced the following evidence. On November 15, 1976, three hunters, while hunting in a wooded area about 100 feet from a little-used gravel and mud road, ran across a skull and some parts of a human body. They promptly summoned law enforcement officers who, after clearing away 12 to 14 inches of leaves that covered the area, collected everything not of natural origin. This consisted of scattered human bones and teeth, a partial dental plate, some hair, remains of a T-shirt, parts of a green plaid shirt, some white, thick, sock-like material and a small amount of white canvas or duck material. The officers testified that they found no evidence of any attempted concealment or burial of the body.

The police delivered all they had found to Dr. Paul Jolly, Assistant Hamilton County Coroner, who testified that, based on comparisons with various dental charts and records, the remains were those of one Nancy Grigsby. He further testified that there was nothing indicating the cause of death, nor that Ms. Grigsby's death might have been the result of a criminal act. Eilene Grigsby, mother of the deceased, testified that Nancy was 22 years old, in apparently good health, except for a bad limp due to injuries received in an auto accident some years before, and that she last saw Nancy on May 3, 1976, when Nancy visited her at a hospital in Cincinnati. She further testified that Nancy did not work or go to school; that she played records during the day and went out at night; that she did not know where Nancy went; that although Nancy often did not come home for several days at a time in 1975, during 1976, it was unusual for her not to come home or telephone. On May 7, 1976, Mrs Grigsby reported Nancy missing to the sheriffs of Clermont and Hamilton counties.

One Herchede testified that he was owner of the Mt. Lookout Tavern. Nancy, he testified, had been a customer for several years, as had appellant. Herchede had seen them talking together or playing the pinball machine three or four times during that one or two year period. Herchede also knew that Nancy frequented other bars and often hitchhiked.

After the above evidence, the court, over appellant's objection that no *corpus delicti* had been established, permitted the prosecution to introduce appellant's confession. This, as noted, appellant assigns as error.

For a great many years the rule, requiring proof of the *corpus delicti* before admission of a confession, has been considered as established in Ohio by *State* v. *Maranda* (1916), 94 Ohio St. 364. The syllabus of *Maranda* reads as follows:

"1. By the *corpus delicti* of a crime is meant the body or substance of the crime, included in which are usually two elements: 1. The act. 2. The criminal agency of the act.

"2. It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the *corpus delicti*, before such confession is admissible. The *quantum* or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a *prima facie* case. It is sufficient if there is *some* evidence outside of the confession that tends to prove *some* material element of the crime charged." (Emphasis *sic*.)

Two recent Ohio Supreme Court cases, *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, sentence vacated (1978), 438 U. S. 911; and *State* v. *Black* (1978), 54 Ohio St. 2d 304, rely on *Maranda* as establishing the law of Ohio. In his opinion in *Edwards, supra,* at pages 35 to 36, Chief Justice C. William O'Neill criticized the rule in the following terms:

"Considering the revolution in criminal law of the 1960's and the vast number of procedural safeguards protecting the due-process rights of criminal defendants, the *corpus delicti* rule is supported by few practical or social-policy considerations. This court sees little reason to apply the rule with a dogmatic vengeance."

Nevertheless, in *Edwards,* the unanimous court in its syllabus, which states the law of the case, held, in part, as follows:

"1a. The *corpus delicti* of a crime is the body or substance of the crime, included in which are usally two elements: (1) the act and (2) the criminal agency of the act.

"b. There must be some evidence in addition to a confession tending to establish the *corpus delicti, before such confession is admissible.*

"c. The *quantum* or weight of such additional or extraneous evidence is not of itself required to be equal to proof beyond a reasonable doubt, nor even enough to make a *prima facie* case. See *State* v. *Maranda,* 94 Ohio St. 364." (Emphasis added.)

The issue then is: Was there, prior to the admission of appellant's confession, some evidence that tended to prove that Nancy Grigsby's death was the result of a criminal agency, or, to put it another way, some evidence that tended to prove a homicide?

There was no evidence, circumstantial or direct, of the cause of death, or of any injury to the body or of any attempt at concealment of the body. In sum, there is nothing in the record on which to base even a suspicion of a homicide, other than the fact that the victim was not known to be suffering from disease and was found in a lonely place. In view of the fact that there are many possible causes of death and many reasons why a person might be alone in an out-of-the-way place we are unconvinced that those facts, standing alone, are evidence of a homicide.

The evidence offered in this case to establish a *corpus delicti* stands in stark contrast to that before the court in *Edwards* and *Black.* In both of those cases the issue was whether the *corpus delicti* of a robbery had been established. In *Edwards* the state's evidence was that the victim, a storekeeper, was found shot in his store. A wallet, containing his credit cards, identification papers and personal papers, but no money, was recovered from the basement of an apartment building. In *Black* the victim was seen by a security guard leaving a hospital carrying a shopping bag. Several minutes later the guard heard three shots. Within an hour the victim's body was found nearby, lying in a pool of blood. "***Police searches of the area failed to produce the shopping bag or any of***[her] missing personal effects.***" *Black, supra,* at page 308. In each of these cases there was clearly evidence which, without reference to a confession, tended to show that a robbery had been committed, thus, establishing the *corpus delicti.*

Were the rule, as it is in some jurisdictions (hereinafter set out), that the prosecution need only produce independent evidence tending to corroborate or establish the reliability of a

confession—not, as it is in Ohio, that the *corpus delicti* must be established *prior to* the admission of the confession—the assignment of error would produce no difficulty. The location of the body in the case *sub judice* and its state of decay corroborated and established the reliability of appellant's confession that in May or June of 1976, he had strangled Nancy Grigsby and deposited her body at the location where it was found.[2] In his confession, appellant described in detail how and where he killed Nancy Grigsby. In particular, he stated that he drove her out to a lonely spot in the country in Clermont County, strangled her, and then carried her body to a place off the road among some trees. His description of the location where he left the body fit the place where Nancy Grigsby's body was found. In fact, subsequent to this confession, appellant accompanied and directed a deputy sheriff to the precise site where the body was found. It is clear from this that appellant's confession could be relied on, since it contains details which no one but the murderer and the police apparently knew.

With the evidence—the finding of the decayed remains of a body in a specific location and the identification of the victim as being Nancy Grigsby—corroborating appellant's confession, it seems most unreasonable to now say that because the state could not, prior to introducing the confession, produce evidence that Nancy Grigsby's death was the result of a criminal act, appellant must go free. Other jurisdictions and text writers assert that the purpose of the *corpus delicti* rule is met if the state produces independent evidence showing the trustworthiness of the confession. This rule, like the traditional *corpus delicti* rule, minimizes the possibility that an innocent man will be convicted of a crime which was not even committed. McCormick on Evidence (2 Ed. 1972) 346, 349, Section 158; 7 Wigmore on Evidence (Chadbourn Rev. 1978) 524, Section 2072; *United States* v. *Abigando* (C.A. 5, 1971), 439 F. 2d 827; *United States* v. *Wilson* (C.A. 3, 1971), 436 F. 2d 122, certiorari denied (1971), 402 U. S. 912; *State* v.

---

[2] One might argue that if the independent evidence is sufficient to corroborate the confession it must be "some evidence" tending to prove that the death was the result of a criminal act. The fallacy in this argument is that the independent evidence in this case, for the reasons set out in the body of the decision, is ambiguous; and, the ambiguity is only resolved by the confession. "Dead body found in lonely place" is only significant when the defendant says, "I killed her and put the body in that place.".

*Johnson* (1960), 31 N.J. 489, 158 A. 2d 11, denial of motion for a new trial affirmed (1961), 34 N.J. 212, 168 A. 2d 1, certiorari denied (1961), 368 U. S. 933; *State* v. *Tillman* (1964), 152 Conn. 15, 202 A. 2d 494; *State* v. *George* (1969), 109 N.H. 531, 257 A. 2d 19.

Similarly, other jurisdictions have dispensed with the strict procedural requirement that the state put on independent evidence tending to show the commission of a crime before the confession can be admitted, as long as corroborative evidence is presented at some time. *United States* v. *Khandjian* (C.A. 5, 1974), 489 F. 2d 133; Annotation 45 A.L.R. 2d 1316; 7 Wigmore on Evidence (Chadbourn Rev. 1978) 529, Section 2073.

However, as noted, the Ohio Supreme Court, in *Edwards* and *Black, supra,* reaffirmed the *Maranda* principle that the confession is not admissible until *after* establishment of the *corpus delicti.* This was not done in this case and we have no choice, therefore, but to follow the syllabus in *Edwards, supra,* and sustain the assignment of error. Since the *corpus delicti* was not established, the confession was inadmissible. Without the confession, no crime was proven, and the case must, therefore, be dismissed and appellant discharged.

We have reviewed appellant's other assignments of error and find that our analysis of the second assignment is dispositive of the case, rendering moot assignments one and three. These assignments are, for that reason, overruled.

*Judgment reversed*
*and defendant discharged.*

SHANNON, P. J., BETTMAN and CASTLE, JJ., concur.