OPINION
{¶ 1} Appellant, David D. Clark, appeals the judgment entered by the Portage County Court of Common Pleas. Clark was ultimately convicted of one count of possession of cocaine, one count of having a weapon while under disability, and two counts of kidnapping, both with firearm specifications.
 {¶ 2} Latasha Franklin lived with her boyfriend, Ronald Henderson, their two small children, her sister, and her sister's son in Kent, Ohio. Jelaketa Jackson is Latasha Franklin's babysitter. She lived with her boyfriend, Gregory Hawkins, in the same neighborhood in Kent.
 {¶ 3} On Monday, October 30, 2000, Clark was in the residence of Latasha Franklin with his friend Robin Stewart. However, what actually happened inside the residence is the subject of two very different stories portrayed at trial.
 {¶ 4} Clark testified on his own behalf. He testified that he had purchased cocaine from Ronald Henderson on prior occasions, but that he had always given the money to Gregory Hawkins, who would make the exchange with Ronald Henderson. Clark claims that he was at Latasha Franklin's house the previous Thursday. During this visit, he claims he purchased four-and-one-half ounces of powder cocaine from Ronald Henderson. After returning to his home in Cleveland, Clark discovered that he was "shorted" in the cocaine transaction, i.e., at least one of the packages of cocaine did not contain the amount of cocaine the parties bargained for.
 {¶ 5} In addition to the cocaine, Clark testified that he purchased a handgun from Ronald Henderson during the Thursday visit. He claims that the handgun was intended for Robin Stewart. He further stated this gun was broken. Clark then decided to visit Ronald Henderson because the cocaine was short and the gun was broken.
 {¶ 6} Clark testified that he and Robin Stewart entered the Franklin residence without using any force. He stated that Henderson appeared to be intoxicated during their meeting. After confronting Henderson about the problems with the drugs and the gun, Henderson became upset when Clark asked for his money back.
 {¶ 7} Clark further testified that, at one point, Henderson was in a closet where there were four or five handguns wrapped in plastic and duct tape. Finally, as Henderson reached under the bed, Clark ran down the steps. At this time, Clark heard gunshots, some of which struck Robin Stewart. Clark and Stewart then ran up the street and hid in a van.
 {¶ 8} The events of the morning as revealed by the state's witnesses are rather different. Collectively, the state's evidence indicated that Clark and Robin Stewart approached Latasha Franklin as she was leaving the house. Clark pointed a gun at her and asked for "Doe," which is Henderson's nickname. Clark, Stewart, and Franklin proceeded to an upstairs bedroom where Henderson was in bed. Clark and Stewart then duct taped Henderson and Franklin. Sometime during these events, Clark gave Stewart a gun, so both Clark and Stewart had a gun.
 {¶ 9} The downstairs alarm was making a beeping noise, so Clark told Stewart to watch Henderson, while he escorted Franklin downstairs to stop the alarm from beeping. While Clark was downstairs, Henderson asked Stewart to check on his young son in another bedroom. Stewart left the room for a few seconds, and, when she returned, Henderson had freed his hands from the duct tape. Henderson then grabbed his own gun he kept near his bed and fired shots at Stewart, hitting her. Stewart and Clark then fled from the house.
 {¶ 10} Shortly after receiving calls about the incident, members of the Kent Police Department noticed a van in the vicinity backing out of a driveway. The officers stopped the van. Gregory Hawkins was driving the van. Officers conducted a consensual search of the Hawkins residence, but did not find any people. The officers then obtained the keys to the van, opened it, and discovered Clark and Robin Stewart lying on the floor of the van covered with articles of clothing.
 {¶ 11} On November 2, 2000, Clark was indicted on one count of aggravated burglary, two counts of kidnapping, and one count of having a weapon while under disability. Clark pleaded not guilty to all of these charges.
 {¶ 12} On January 23, 2001, a jury trial was held. The jury found Clark guilty of having a weapon while under disability. However, the jury could not reach a verdict on the remaining charges, and the trial court declared a mistrial for those counts.
 {¶ 13} During the trial on January 23, 2001, Clark testified on his own behalf. While under oath, Clark admitted to possessing approximately twenty-eight grams of cocaine that was found in the van on the October 30, 2000. Based on this testimony, Clark was indicted on February 9, 2001, for possession of cocaine. This indictment was assigned trial court number 01 CR 0080.
 {¶ 14} On February 21, 2001, a second jury trial was held on the remaining charges and on the new charge. The jury found Clark not guilty on the aggravated burglary charge, but found him guilty of possession of cocaine and of both counts of kidnapping, with firearm specifications.
 {¶ 15} Clark was sentenced to serve a prison term of eleven months for having weapons while under disability, and nine years on each of the kidnapping convictions. The above sentences were ordered to be served concurrent to each other. The trial court merged the firearm specifications and sentenced Clark to a term of three years for the firearm specification, to be served consecutively to the kidnapping sentences. Clark was also sentenced to a term of three years for the possession of cocaine charge, to be served consecutively to the kidnapping charges.
 {¶ 16} There have been five separate notice of appeals filed in this case. Case No. 2001-P-0031 was filed from the trial court's judgment entry in case No. 00 CR 0392, dated February 9, 2001, wherein the trial court noted that the jury had found Clark guilty on count four, having a weapon while under disability, but could not reach a verdict on the first three counts. The trial court then declared a mistrial and ordered a retrial on the first three counts.
 {¶ 17} The trial court issued a judgment entry dated March 2, 2001, which contained both trial court case numbers. Case No. 2001-P-0033 was filed from the trial court's judgment entry in case No. 00 CR 0392, dated March 2, 2001, where the trial court announced the jury's verdict of not guilty of aggravated burglary, but guilty of both counts of kidnapping, with firearm specifications. Case No. 2001-P-0034 was also filed from the trial court judgment entry dated March 2, 2001, where the trial court noted that the jury had found Clark guilty of the cocaine charge in case No. 01 CR 0080.
 {¶ 18} Case No. 2001-P-0057 was filed from a judgment entry of sentence dated April 26, 2001, from trial court case No. 00 CR 0392. Case No. 2001-P-0058 was filed from the same April 26, 2001 trial court judgment entry, but in trial court case No. 01 CR 0080. All of these cases have been consolidated on appeal for all purposes.
 {¶ 19} Robin Stewart and Gregory Hawkins were also convicted of crimes resulting from the same incident. Their appeals have been previously decided by this court.[1]
 {¶ 20} Clark raises twelve assignments of error. Clark's trial counsel initially represented him on appeal and filed a brief on his behalf containing one assignment of error. Subsequently, new counsel was appointed and filed a supplemental brief containing an additional eleven assignments of error. Clark's first and third assignments of error are:
 {¶ 21} "[1.] The Trial Court erred in admitting the recorded statement of co-defendant, Robin Stewart to the Kent Police Department, which statement inculpated David Clark in the alleged kidnapping of Ronald Henderson and Latasha Franklin, as there was no evidence besides this statement which offered proof beyond a reasonable doubt of Clark's guilt of the kidnapping charges.
 {¶ 22} "[3.] Defendant was denied his right of confrontation and cross-examination when the unsworn testimony of a co-defendant's taped statement to the police was played for the jury."
 {¶ 23} Since Clark's first and third assignments of error both concern the admissibility of Co-Defendant Robin Stewart's statement, we will address them with a single analysis.
 {¶ 24} Prior to trial, the state informed Clark's trial counsel that it intended to use Robin Stewart's statement, which was given at the hospital. Defense counsel filed a motion to suppress this statement, and a hearing was held. The trial court denied the motion to suppress, permitting the statement to be used at trial.
 {¶ 25} The statement was used at both trials; however, we will focus our analysis on the impact of the statement at the second trial, since the second trial was where Clark was convicted of the more serious kidnapping charges. At trial, outside of the presence of the jury, Robin Stewart took the witness stand and asserted her Fifth Amendment rights against self-incrimination. Thereafter, in front of the jury, a tape of the interview with Robin Stewart was played. Clark's trial counsel renewed his motion to suppress prior to the tape being played and prior to the tape being admitted into evidence.
 {¶ 26} In order for a statement of a co-defendant to be admitted against a defendant in a criminal trial, there are two important safeguards that must be satisfied. The first is the Rules of Evidence generally prohibiting hearsay statements.[2] The second is the Confrontation Clause of the Sixth Amendment to the United States Constitution.[3]
 {¶ 27} Although Robin Stewart's statement was hearsay, it would fall within a hearsay exception. Evid.R. 804(B)(3) permits statements to be admissible if they are "statements against interest." Since her statement subjected her to criminal liability, it would be admissible as a statement against interest.[4]
 {¶ 28} However, in order for a statement of a co-defendant to be admitted without violating the Confrontation Clause, the statement must "contain adequate indicia of reliability."[5] These statements are presumptively unreliable.[6] However, this presumption may be rebutted.[7] Therefore, the burden is on the state to demonstrate that the statement contained an indicia of reliability.
 {¶ 29} The trial court found that there was an indicia of reliability in Robin Stewart's statement. For the reasons that follow, we reverse the trial court's judgment regarding the suppression of this statement.
 {¶ 30} Prior to ruling on Clark's motion to suppress, the trial court reviewed the opinion of Judge Kainrad, another Portage County Court of Common Pleas Judge, who ruled that Robin Stewart's statement was admissible against a different co-defendant. The trial court further stated that it had reviewed the transcript of the statement. Thereafter, the trial court found that the statement contained an indicia of reliability.
 {¶ 31} We are extremely concerned with the following statement from the trial court at the suppression hearing, "my colleague, Judge Kainrad, having examined the same issue and I assume having heard moreevidence than I have heard, found that there was sufficient indicia of reliability." (Emphasis added.) The record does not indicate that the trial court actually considered the evidence that was presented in the other trial. Rather, the opposite is suggested, as the court admits that Judge Kainrad heard more evidence than it did.
 {¶ 32} Essentially, the trial court took judicial notice of Judge Kainrad's opinion from another case on a similar issue. This court has held that a trial court is not permitted to take judicial notice of proceedings in separate actions.[8] "This general rule has expressly been applied in criminal cases in which a trial court has attempted to take notice of testimony in a previous action."[9] The rationale for this rule is that a trial court taking judicial notice of other proceedings would deny a criminal defendant the right to cross-examine adverse witnesses.[10] The Sixth Appellate District has applied this rule to suppression hearings.[11]
 {¶ 33} The rights of Clark were negatively affected by the trial court's decision to take judicial notice of Judge Kainrad's opinion. Although evidence may have been presented at a hearing in a different trial regarding the admissibility of Robin Stewart's statement, Clark was prejudiced because he did not have the right to cross-examine adverse witnesses. For example, evidence was presented at trial that indicated Robin Stewart had morphine in her system when she gave this statement. Had the state been put to its burden to present evidence showing the statement contained an indicia of reliability, Clark could have cross-examined the witnesses regarding the effects of the morphine on Robin Stewart.
 {¶ 34} In State v. Taylor, the court remanded the matter in order for the trial court to hold a separate suppression hearing on a specific issue, as a suppression hearing was not originally held on that issue.[12] However, in the case sub judice, a full suppression hearing was held, where the state was given the opportunity to present evidence to show that Robin Stewart's statement contained an indicia of reliability. However, when given the opportunity to present such evidence, the assistant prosecutor stated, "I didn't plan to put on all the testimony we put on in the other case." In fact, no evidence was presented other that the statement itself. The state had the burden to show that the statement was admissible. It failed to meet this burden.
 {¶ 35} The trial court erred by taking judicial notice of matters from another proceeding. In addition, other than the statement itself, no evidence was offered to show that Robin Stewart's statement contained an indicia of reliability. Thus, the trial court erred by admitting Robin Stewart's statement.
 {¶ 36} Since the admissibility of Robin Stewart's statement violated Clark's Confrontation Clause rights, our final analysis on this issue is to determine whether the error was harmless beyond a reasonable doubt.[13] "This inquiry is not simply a sufficiency of the remaining evidence inquiry; rather, the question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."[14]
 {¶ 37} We find that the admission of Robin Stewart's statement in the first trial was harmless beyond a reasonable doubt. In the first trial, the jury found Clark guilty only of having a weapon while under disability. At the first trial, Clark testified on his own behalf and admitted to carrying a gun into the residence on the day in question. In addition, both Latasha Franklin and Ronald Henderson testified that Clark was carrying a gun. Accordingly, due to the other testimony regarding the gun and, specifically, the admission from Clark, the improper admission of Robin Stewart's statement was harmless beyond a reasonable doubt.
 {¶ 38} We also find that the admission of Robin Stewart's statement was harmless beyond a reasonable doubt regarding the possession of cocaine conviction from the second trial. Stewart does make references to drugs in her statement; however, she refers to drugs as the reason that they were going to the residence. She does not state that Clark ever had any cocaine in his possession. Moreover, at the first trial, Clark testified that the cocaine was his. At the second trial, this prior testimony was used against Clark during the state's case-in-chief. Clark again admitted that the cocaine was his during his testimony at the second trial. Therefore, the admission of Stewart's statement was harmless beyond a reasonable doubt, as there is not a reasonable possibility that the statement contributed to the drug conviction.
 {¶ 39} However, regarding the kidnapping convictions, we cannot say that the improper admission of Robin Stewart's statement was harmless beyond a reasonable doubt. The statement was also used against Clark in his first trial, which resulted in a hung jury in regard to the kidnapping charges. Therefore, we cannot say that the result of the second trial would not have been different without the statement of Robin Stewart implicating Clark. Although there was other evidence presented regarding the alleged kidnappings at the second trial, this evidence was also introduced at the first trial, which did not result in convictions on those counts. The admission of Co-Defendant Robin Stewart's statement, which implicated Clark, had a reasonable possibility of contributing to the jury's decision to convict Clark of the kidnapping charges.
 {¶ 40} In State v. Stewart, a separate panel of this court held that the trial court did not err by failing to suppress Robin Stewart's statement.[15] However, since the statement was being used against Stewart in her own trial, the state was only required to show that she knowingly, voluntarily, and intelligently waived her Miranda rights.[16]
The "indicia of reliability" standard of Madrigal was not applicable. In addition, we note that a majority opinion from a third panel of this court held that Robin Stewart's statement contained an indicia of reliability.[17] However, in State v. Hawkins, a suppression hearing was held, wherein evidence was presented, including the stipulated admission of a transcript of testimony from the suppression hearing in the trial of Robin Stewart.[18]
 {¶ 41} Clark's first and third assignments of error, as they relate to the convictions of having a weapon while under disability and possession of cocaine, are without merit. However, Clark's first and third assignments of error, as they relate to the kidnapping charges, have merit.
 {¶ 42} Clark's second assignment of error is:
 {¶ 43} "Defendant was denied effective assistance of counsel."
 {¶ 44} When considering a claim for ineffective assistance of counsel, the Supreme Court of Ohio has adopted the following standard, "[c]ounsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance."[19] Moreover, "`a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim the ground of on lack of sufficient prejudice, * * * that course should be followed.'"[20]
 {¶ 45} Clark first alleges that he was denied the effective assistance of counsel due to counsel's concession of guilt.
 {¶ 46} The Supreme Court of Ohio has held that trial strategy decisions should not be second-guessed and that "`a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[21]
 {¶ 47} Essentially, the trial strategy of the defense was to concede guilt on the cocaine charge, in an attempt to convince the jury that Clark was not guilty of the remaining charges. Clark's trial counsel told the jury that they would be able to convict Clark of the cocaine charge. Clark had already implicated himself on this charge under oath at the first trial. His trial counsel was obviously aware that the state would introduce the Clark's testimony from the first trial, which, in fact, was done. Finally, trial counsel was aware that Clark was intending to take the stand in the second trial and again testify that the drugs were his. Although a concession of guilt, trial counsel's actions were consistent with the overall defense strategy, that Clark was in Kent on the morning in question to conclude a drug transaction, not to commit burglary.
 {¶ 48} Clark's trial counsel also informed the jury that Clark had been convicted of having a weapon while under disability. On appeal, Clark asserts that this was ineffective assistance of counsel, because the offenses in the second trial carried firearm specifications that needed to be proven beyond a reasonable doubt. We disagree. In both of the trials, numerous witnesses testified that Clark had a gun inside the residence. Clark testified that the reason he had the gun was that it was broken and that he was returning it to Henderson. If the jury believed Clark's version of the events, he would have been found not guilty of the underlying kidnapping charges and, thus, would not have been found guilty of the accompanying firearm specifications. Clark's claim for ineffective assistance of counsel on this ground fails.
 {¶ 49} Clark asserts that his trial counsel was ineffective for failing to file a motion to sever the new indictment on drug possession. While we are skeptical that such a motion would be successful, we will instead turn to the second prong of the Strickland test, as Clark has not demonstrated how he was prejudiced by his counsel's failure to file a motion to sever the new indictment. Even if the motion was granted, the state would still have been able to admit the drug analysis report, indicating that the substance was cocaine. Similarly, the state could still have used his prior testimony, where he admits that the cocaine was his.
 {¶ 50} In regard to the kidnapping and burglary charges, Clark would most likely have used the same defense that he used in both trials. He would have argued that his purpose for being in Latasha Franklin's house that day was to complete a drug transaction, not to rob Henderson and Franklin. Accordingly, the jury would still hear evidence that Clark was a drug dealer.
 {¶ 51} We do not see that the results of the trial would have been any different had Clark's trial counsel filed a motion to sever the second indictment, and said motion was granted. Clark has not demonstrated ineffective assistance of counsel on this issue.
 {¶ 52} Clark contends he was denied the effective assistance of counsel due to counsel's failure to file a motion to suppress his arrest and seizure. Clark argues that his arrest was unconstitutional because he was arrested without a warrant and the police did not have a search warrant to search Jelaketa Jackson's van. We will direct our analysis on the implications of the absence of a search warrant. This is because Clark's brief focuses on the validity of the search, rather than attacking the constitutionality of the arrest itself.
 {¶ 53} We note that failure to file a suppression motion does not, per se, render counsel's performance ineffective.[22] This court has held that the burden is on the defendant to show ineffective assistance of counsel where trial counsel did not file a suppression motion.[23]
 {¶ 54} There are several hurdles that Clark would have to overcome to have been successful in a motion to suppress. The first hurdle to overcome is whether Clark had standing to assert his Fourth Amendment rights. "A defendant bears the burden of proving not only that the search was illegal, but also that he had a legitimate expectation of privacy in the area searched."[24] As this rule pertains to a search of a vehicle, an individual, who is merely a passenger in an automobile and has no property or possessory interest in the vehicle, may not challenge the constitutionality of the search without showing that they had a reasonable expectation of privacy in the area of the vehicle that was searched.[25] Clark was found on the floor of Jelaketa Jackson's van. Clark has not shown that he had a reasonable expectation of privacy in the interior of Jackson's van.
 {¶ 55} A second hurdle to overcome is that Clark would have to have shown the consent given by Gregory Hawkins to search the van was coerced. This could probably be accomplished, because officers testified that Hawkins was told to give the officers the keys or they would break the window.
 {¶ 56} Perhaps the highest hurdle was an exception to theFourth Amendment right to privacy, the doctrine of exigent circumstances. The police officers were looking for two armed suspects. The officers believed there were people in the van. Armed suspects, especially those sought in connection to a felony, in a vehicle posed a danger to the officers, as well as other people in the neighborhood.
 {¶ 57} Finally, the "`Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.'"[26] Officer Gilliland testified that, after responding to the radio call of shots fired, someone at the scene stated "I shot the girl." At the time they opened the van, the officers reasonably believed that someone in the van had received a gunshot wound. Indeed, Robin Stewart was found in the van with gunshot wounds.
 {¶ 58} Clark has not demonstrated that a motion to suppress would have been successful and, therefore, has not demonstrated a meritorious claim of ineffective assistance of counsel in regard to this issue.
 {¶ 59} Next, Clark asserts that his trial counsel's performance was ineffective because counsel brought drug usage and dealing into the record. However, Clark, himself, testified regarding his history with drugs. The final decision of whether a defendant will testify on his own behalf is the defendant's.[27] This testimony was part of the defense strategy, that the events in question were the result of a dispute over a drug transaction, not a burglary. As Clark personally testified regarding his history with drugs, he has not demonstrated that he was prejudiced by his counsel mentioning it. Therefore, Clark's claim of ineffective assistance of counsel on this ground fails.
 {¶ 60} Clark contends that he received ineffective assistance of counsel when his trial counsel introduced evidence of his prior convictions. These prior convictions all involved drug offenses. The introduction of these prior convictions was consistent with the overall trial strategy of the defense. Again, the defense was attempting to establish that Clark was a drug dealer and that the events of the morning in question were the result of a failed drug transaction, not a burglary. As the decision to introduce the prior drug convictions was one of trial strategy, it does not amount to ineffective assistance of counsel.
 {¶ 61} Even if we were to find that counsel's performance was deficient, Clark's claim for ineffective assistance of counsel on this ground would still fail, because Clark admitted he was a drug dealer and, therefore, has not shown any prejudice by the introduction of his prior drug convictions. This is because the result of the introduction of the prior drug convictions is that the jury would draw negative implications from the fact that Clark was a drug dealer. However, Clark took the stand and admitted, as part of his defense, that he was a drug dealer. Accordingly, Clark has not raised a successful claim of ineffective assistance of counsel on this issue.
 {¶ 62} Clark also asserts that he was denied the effective assistance of counsel because his trial counsel failed to request a jury instruction on the lesser-included offenses of kidnapping. The Supreme Court of Ohio has held that the "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel."[28]
 {¶ 63} The trial strategy in this case was readily apparent. The defense, through the testimony of Clark, was asserting that the events of the morning in question involved a failed drug transaction. According to Clark's testimony, there was no restraint of the alleged victims whatsoever. Therefore, Clark's trial counsel's failure to request instructions on a lesser-included offense does not amount to ineffective assistance of counsel.
 {¶ 64} Having found all of Clark's arguments regarding ineffective assistance of counsel unpersuasive, his second assignment of error is without merit.
 {¶ 65} Clark's fourth assignment of error is:
 {¶ 66} "Defendant was denied his right of confrontation and cross-examination when the court admitted a laboratory report concerning the analysis of cocaine."
 {¶ 67} The state provided Clark's trial attorney with a copy of a laboratory report from the Bureau of Criminal Identification and Investigation concerning the analysis of a substance determined to be cocaine. This report was admitted at trial. This was prima-facie evidence of the content, identity, and weight of the substance.[29] Clark's trial attorney stated that he had received the report more than seven days before the trial. Finally, pursuant to R.C. 2925.51(D), the laboratory report contained a notice to accused, notifying Clark that he needed to demand the testimony of the person signing the report.
 {¶ 68} If Clark wished to cross-examine the individual who signed the report, he needed to demand the testimony within seven days of receipt of the report.[30] This was not done. Therefore, the trial court did not err by admitting the report without the testimony of the person who signed the report.
 {¶ 69} Clark's fourth assignment of error is without merit.
 {¶ 70} Clark's fifth assignment of error is:
 {¶ 71} "Defendant was denied due process of law when he was indicted and tried for an offense for which speedy trial time had expired."
 {¶ 72} "In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment."[31]
 {¶ 73} The state did not know of two important facts at the time of the original indictment, both of which are essential to a charge of drug possession. First, the analysis date of the white substance, determined to be cocaine, was January 3, 2001. Although the state may have had a good idea that the substance was cocaine prior to the analysis date, they did not know for sure until the substance was analyzed in January 2001. Moreover, the cocaine was found in Jelaketa Jackson's van. The state did not know whose cocaine it was. It could have been Jackson's, since she owned the van, or any of three individuals whom the police knew were in the van on that morning, Clark, Robin Stewart, or Gregory Hawkins. It was not until Clark admitted that the cocaine was his at the first trial, that the state was aware of a key element of drug possession, ownership.
 {¶ 74} Since there is no evidence that the state was aware of the fact that the cocaine was Clark's until he testified in his first trial on January 23, 2001, there are not speedy trial concerns for the second indictment not being filed until February 9, 2001.
 {¶ 75} Clark's fifth assignment of error is without merit.
 {¶ 76} Clark's sixth and tenth assignments of error are:
 {¶ 77} "[6.] Defendant was denied due process of law when the trial testimony from a former trial was used as substantive evidence to convict defendant at a retrial.
 {¶ 78} "[10.] Defendant was denied due process of law when his testimony from his prior trial was offered without any corroborating evidence."
 {¶ 79} As both of these assignments of error allege that there was error in the admission of Clark's prior testimony, we will address them together.
 {¶ 80} "Generally, a defendant waives his Fifth Amendment privilege against self-incrimination by voluntarily taking the stand in his own behalf at trial. In so doing, the defendant further waives his right to assert the privilege of the Fifth Amendment where such testimony is used against him in any subsequent trial on the same offense."[32]
 {¶ 81} In the second trial, Clark was retried on the burglary and kidnapping charges. However, the primary reason for the state introducing his former testimony was to prove his guilt on the cocaine charge. Technically, the cocaine charge was not the "same offense," as it had a separate trial court number and was not tried in the first trial. However, the cocaine was found on the morning of the alleged incident, in the same van that Clark was found hiding.
 {¶ 82} In addition, the Ninth Appellate District has held that a defendant's Fifth Amendment rights were not violated when prior testimony from a civil hearing was used against a criminal defendant.[33] The Ninth District has also held that testimony given by a witness in the trial of a co-defendant may be used against him at his own trial.[34]
 {¶ 83} We hold that, by voluntarily taking the witness stand in the first trial and freely testifying in a way that could lead to criminal liability, Clark waived his Fifth Amendment privilege against self-incrimination, and, thus, the state could offer his prior testimony.
 {¶ 84} In his tenth assignment of error, Clark argues that there needed to be corroborating evidence of the cocaine charge in addition to his prior testimony. For this proposition, Clark cites several cases, including State v. Ralston.[35] In Ralston, the court held that, in an aggravated murder trial, additional evidence of the crime must be introduced before a defendant's extrajudicial confession.[36]
 {¶ 85} Clark's testimony was under oath in a court of law and, thus, was not extrajudicial. In addition, Detective Stirm of the Kent Police Department testified that he found the cocaine in the same van where Clark was apprehended. Lastly, the state introduced the lab report, which was prima-facie evidence of the identity of the substance as cocaine. There was corroborating evidence presented that indicated Clark possessed cocaine on the morning in question.
 {¶ 86} Clark's sixth and tenth assignments of error are without merit.
 {¶ 87} Clark's seventh assignment of error is:
 {¶ 88} "Defendant was denied a fair trial when improper evidence was permitted to be offered by various law enforcement officials."
 {¶ 89} Detective Stein compared the consistency of the versions of the events relayed by multiple witnesses. Clark's attorney did not initially object to this testimony. Clark's defense attorney later objected to Detective Stein's testifying to the consistency of the statements, the trial court sustained the objection. No further testimony was given by this witness regarding the consistency of statements.
 {¶ 90} Since Clark's trial attorney did not initially object to this testimony, Clark has waived all but plain error.[37] Plain error exists only where the results of the trial would have been different without the error.[38]
 {¶ 91} This instance does not rise to the level of plain error. Detective Stein was merely testifying whether the statements were consistent. He was not testifying as to whether he believed the statements were truthful. There was minimal testimony on this topic, which ended when the trial court properly sustained defense counsel's objection. We cannot say that the results of the trial would have been different without this testimony.
 {¶ 92} Clark's seventh assignment of error is without merit.
 {¶ 93} Clark's eighth assignment of error is:
 {¶ 94} "Defendant was denied a constitutionally fair and impartial jury venire."
 {¶ 95} Defense counsel moved for a mistrial on the grounds that the entire jury pool was white, while the defendant was black. This motion was overruled.
 {¶ 96} "[T]here is `no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.' (Citations omitted.)"[39]
 {¶ 97} There is nothing in the record to indicate that the jury selection process for this trial was impartial in any way, or that it was intended to exclude a certain group of people.
 {¶ 98} Clark's eighth assignment of error is without merit.
 {¶ 99} Clark's ninth assignment of error is:
 {¶ 100} "Defendant was denied his constitutional right to be present and to a fair and impartial jury when outside jury contact was made and no proper inquiry of the affected jurors was conducted in defendant's presence or his counsel['s]."
 {¶ 101} During one of the breaks in the trial, there was some contact between on of the alleged victims, Ronald Henderson, and some of the jurors. Henderson was on an elevator with some of the jurors. He reportedly said "[d]on't look at me, don't look at me" and "I'm not going to take this shit."
 {¶ 102} "`[T]he trial court determines, as a question of fact, whether the demonstration deprived the defendant of a fair trial by improperly influencing the jury. In the absence of clear, affirmative evidence to the contrary, the trial court's determination will not be disturbed.'"[40]
 {¶ 103} The trial court independently questioned the jurors involved in this incident. The court asked them if the incident would affect their ability to be fair and impartial. Although individual responses do not appear in the record, the colloquy indicates that the trial court determined that the jurors involved could proceed in an unbiased manner. The trial court also instructed the jurors involved not to discuss the incident with any of the other jurors.
 {¶ 104} The trial court promptly addressed the situation and determined that the trial could proceed in an unbiased manner. The record is devoid of any evidence suggesting that the trial court's determination was incorrect. Thus, we will not disturb the determination.
 {¶ 105} Clark also asserts that this inquiry was conducted outside of the presence of himself or his trial counsel, in violation of Crim.R. 43. The record does not reveal whether Clark, himself, was present. However, the record is clear that his trial counsel was present. Following a juror's statement to the court relating what was said out of court, Mr. Cox, Clark's trial counsel, asked "[w]hat did he —"
 {¶ 106} Clark's trial counsel was present for the inquiry. Moreover, Clark has not shown that he was precluded from personally attending the inquiry, or even that he was not in attendance. Since Clark's trial counsel was present and there is no evidence that Clark was not present, Clark has not demonstrated that his Crim.R. 43 rights were violated.
 {¶ 107} Clark's ninth assignment of error is without merit.
 {¶ 108} Clark's eleventh assignment of error is:
 {¶ 109} "Defendant was denied a fair trial by improper bolstering and vouching by the prosecutor of witnesses."
 {¶ 110} During the state's closing argument, the prosecutor made the remarks that there was "credible, eyewitness neighbor evidence" and another statement indicating that the neighbor's testimony was credible.
 {¶ 111} We note that counsel is to be given latitude during summation.[41] In addition, prosecutorial misconduct will not be a ground for error unless the defendant is denied a fair trial.[42] Clark did not object to these comments at trial, thus, he has waived all but plain error.[43]
 {¶ 112} A prosecutor may argue that a certain witness is a reliable witness and argue facts that support a witness's credibility. However, an attorney is not permitted to vouch for a witness.[44]
 {¶ 113} We do not believe that the results of the trial would have been different without the prosecutor's comments. Accordingly, these comments do not meet the plain error standard. Likewise, Clark was not denied a fair trial because of the comments. Moreover, any potential error, which may have occurred as a result of the prosecutor's comments regarding the credibility of witnesses, was cured by the trial court. After closing arguments, the trial court instructed the jury "you are the sole judges of the facts and the credibility of the witnesses and the weight to be given to that testimony."
 {¶ 114} Clark's eleventh assignment of error is without merit.
 {¶ 115} Clark's twelfth assignment of error is:
 {¶ 116} "Defendant was denied due process of law and subjected to a cruel and unusual punishment when he was consecutively sentenced to terms of imprisonment."
 {¶ 117} Having found merit in part of Clark's first and third assignments of error, Clark's twelfth assignment of error is moot.
 {¶ 118} The judgment relating to Clark's convictions for having a weapon while under disability and possession of cocaine is affirmed. The judgment of the trial court regarding Clark's kidnapping convictions is reversed, as is the entire portion of the trial court's judgment regarding sentencing. This matter is remanded for a new trial, on the kidnapping charges only, consistent with this opinion. Following the outcome of the new trial, the trial court shall resentence Clark on all charges he has been convicted of, including the convictions for having a weapon while under disability and possession of cocaine.
Judith A. Christley, J., Concurs.
Diane V. Grendell, J., Concurs in part, dissents in part, with concurring/dissenting opinion.
[1] State v. Stewart, 11th Dist. No. 2001-P-0035, 2002-Ohio-7270; Statev. Hawkins, 11th Dist. No. 2001-P-0060, 2002-Ohio-7347.
[2] State v. Madrigal (2000), 87 Ohio St.3d 378, 384.
[3] Id.
[4] Evid.R. 804(B)(3).
[5] State v. Madrigal, 87 Ohio St.3d 378, paragraphs one and three of the syllabus.
[6] Id. at 386, citing Lilly v. Virginia (1999), 527 U.S. 116,131.
[7] Id. at 387, quoting Lee v. Illinois (1986), 476 U.S. 530,543.
[8] (Citations omitted.) State v. Raymundo (Aug. 18, 1995), 11th Dist. No. 94-T-5025, 1995 Ohio App. LEXIS 3395, at *8-9.
[9] Id. at *9, citing State v. Brown (Apr. 13, 1992), 12th Dist. No. CA91-07-043, 1992 Ohio App. LEXIS 1927.
[10] Id.
[11] State v. Taylor (1999), 135 Ohio App.3d 634, 639, fn. 5.
[12] Id.
[13] State v. Madrigal, 87 Ohio St.3d at 388.
[14] Id., citing Chapman v. California (1967), 386 U.S. 18, 23.
[15] State v. Stewart, 2002-Ohio-7270, at ¶ 46-69.
[16] Id. at ¶ 47-49.
[17] State v. Hawkins, 2002-Ohio-7347, at ¶ 27-37.
[18] Id. at ¶ 56.
[19] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus, adopting the test set forth in Strickland v. Washington
(1984), 466 U.S. 668.
[20] Id. at 143, quoting Strickland, 466 U.S. at 697.
[21] State v. Mason (1998), 82 Ohio St.3d 144, 157-158, quotingStrickland, 466 U.S. at 689.
[22] State v. Madrigal (2000), 87 Ohio St.3d 378, 389, quotingKimmelman v. Morrison (1986), 477 U.S. 365, 384.
[23] State v. Lott (Dec. 26, 1997), 11th Dist. No. 96-A-0011, 1997 Ohio App. LEXIS 5860, at *8-10.
[24] State v. Dennis (1997), 79 Ohio St.3d 421, 426, citing Rawlingsv. Kentucky (1980), 448 U.S. 98, 104.
[25] Rakas v. Illinois (1978), 439 U.S. 128, paragraph four of the syllabus.
[26] State v. Nields (2001), 93 Ohio St.3d 6, 16, quoting Mincey v.Arizona (1978), 437 U.S. 385, 391.
[27] (Citations omitted.) State v. Edwards (1997), 119 Ohio App.3d 106,109.
[28] State v. Griffie (1996), 74 Ohio St.3d 332, 333, citing State v.Clayton (1980), 62 Ohio St.2d 45, certiorari denied (1980),449 U.S. 879.
[29] R.C. 2925.51(A).
[30] R.C. 2925.51(C).
[31] State v. Baker (1997), 78 Ohio St.3d 108, syllabus.
[32] State v. Wolf (Jan. 31, 1997), 11th Dist. No. 94-L-047, 1997 Ohio App. LEXIS 348, at *9, citing Harrison v. United States (1968),392 U.S. 219, 222 and State v. Slone (1975), 45 Ohio App.2d 24,27-28.
[33] State v. Georgeoff (Jan. 16, 2002), 9th Dist. No. 3195-M, 2002 Ohio App. LEXIS 92, at *5-6.
[34] State v. Gerber (Dec. 22, 1999), 9th Dist. No. 99CA0018, 1999 Ohio App. LEXIS 6154, at *10-12.
[35] State v. Ralston (1979), 67 Ohio App.2d 81.
[36] Id.
[37] State v. Tibbits (2001), 92 Ohio St.3d 146, 157.
[38] State v. Issa (2001), 93 Ohio St.3d 49, 56, citing State v.Moreland (1990), 50 Ohio St.3d 58, 62.
[39] State v. Johnson (2000), 88 Ohio St.3d 95, 117, quoting Taylor v.Louisiana (1975), 419 U.S. 522, 538.
[40] State v. Benge (1996), 75 Ohio St.3d 136, 144, quoting State v.Morales (1987), 32 Ohio St.3d 252, 255.
[41] State v. Woodards (1966), 6 Ohio St.2d 14, 26.
[42] (Citations omitted.) State v. Maurer (1984), 15 Ohio St.3d 239,266.
[43] State v. Green (2000), 90 Ohio St.3d 352, 373, citing State v.Wade (1978), 53 Ohio St.3d 182, paragraph one of the syllabus.
[44] Id.