[Cite as *State v. Kinsey*, 2019-Ohio-4248.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-180431 |
| | | TRIAL NO. B-1706565 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CHRISTOPHER KINSEY, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: October 16, 2019

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*The Law Firm of John D. Hill, L.L.C.,* and *John D. Hill,* for Defendant-Appellee.

**CROUSE, Judge.**

{¶1}    During a shootout involving over 20 people, with over 100 rounds fired from an unknown number of firearms, an innocent bystander was shot and injured.  The state suspected that defendant-appellee Christopher Kinsey fired the shot that injured the victim, but waited to charge him with felonious assault until it received the ballistics report tying his rifle to the bullet that struck the victim.  The trial court granted Kinsey's motion to dismiss the felonious-assault charge, holding that his statutory speedy-trial rights had been violated.

{¶2}    The state has appealed from the trial court's dismissal of the felonious-assault charge.  In one assignment of error, the state argues that the trial court erred in dismissing the indictment when it found that the ballistics report linking Kinsey to the shooting was not new and additional evidence because not only had the state possessed the bullet that hit the victim since the day of the shooting, it also had probable cause prior to receiving the ballistics report to believe that Kinsey was the one who had fired that bullet.  Because we find the ballistics report to be new and additional evidence, we reverse the trial court's judgment granting the motion to dismiss and remand the cause for further proceedings.

### *Factual Background*

{¶3}    On September 18, 2016, a confrontation between two groups over the filming of a rap video led to a shootout in a residential neighborhood.  The victim was working in his yard and was hit by a stray bullet.  Investigation led police to 931 Adams Street, one block south of where the shootout occurred.  There, police found Kinsey and another individual, both suffering from bullet wounds.  Both were

transported to the hospital. Police searched the house at 931 Adams Street and found an M&P 15 rifle.

{¶4} Police also collected the bullet that struck the victim and sent it, along with the rifle, to the coroner's lab, which later sent it to the Bureau of Criminal Investigation ("BCI") for ballistics testing. That same day, police charged Kinsey with having a weapon while under disability and receiving stolen property. Kinsey pled guilty to those charges on November 17, 2016.

{¶5} Kinsey was immediately a suspect for the felonious assault, and was interviewed as such, on September 18. Police tied the rifle to Kinsey because three witnesses saw Kinsey with the rifle—one saw Kinsey retrieve the rifle from his car, another saw Kinsey bring the rifle into 931 Adams Street, and a third saw Kinsey actually fire the rifle. Police also located shell casings at the scene that matched the type of ammunition for an M&P 15 rifle.

{¶6} On June 1, 2017, BCI released its ballistics report which confirmed that the bullet that hit the victim was fired from Kinsey's rifle. Kinsey was indicted for felonious assault on July 24, 2017.

{¶7} Kinsey filed a motion to dismiss the indictment on the ground that his speedy-trial rights under R.C. 2945.71 had been violated. After a hearing, the trial court granted the motion to dismiss, holding that Kinsey's speedy-trial rights had been violated because more than 270 days had elapsed between the time Kinsey was arrested on September 18, 2016, and indicted on July 24, 2017.

### *Sole Assignment of Error*

{¶8} The state argues that the trial court erred in dismissing the indictment because the ballistics report represented new and additional evidence that Kinsey was the one responsible for shooting the victim.

{¶9} Appellate review of a ruling on a motion to dismiss for a violation of speedy-trial rights involves a mixed question of law and fact. *State v. Terrell*, 1st Dist. Hamilton No. C-020194, 2003-Ohio-3044, ¶ 17. We review the trial court's factual findings to ensure they are supported by competent and credible evidence, and review the court's conclusions of law de novo. *Id.*

{¶10} The right to a speedy trial is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution. To enforce the constitutional mandate, Ohio enacted R.C. 2945.71, which designates specific time limits for bringing a defendant to trial. A defendant charged with a felony, such as Kinsey, must be brought to trial within 270 days of arrest. R.C. 2945.71(C)(2).

{¶11} The statutory speedy-trial provisions are coextensive with state and federal constitutional speedy-trial provisions. The main distinction is that the statutory right is specific and detailed, while the constitutional right requires a four-factor analysis: the length of the delay, the reason for the delay, whether the defendant requested a speedy trial, and whether he or she was prejudiced by the delay. *State v. Branch,* 9 Ohio App.3d 160, 162, 458 N.E.2d 1287 (8th Dist.1983), citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Violation of the speedy-trial statute is not necessarily a violation of the constitutional

speedy-trial right. *City of Columbus v. Nappi*, 5 Ohio St.2d 99, 100, 214 N.E.2d 83 (1966).

{¶12} The delay between Kinsey's arrest on September 18, 2016, and his indictment for felonious assault on July 24, 2017, is troubling, especially since very little evidence was offered to explain the delay. Nevertheless, although determining against whom the delay should be attributed would be relevant if we were analyzing a constitutional violation of Kinsey's speedy-trial rights, it is not relevant to our analysis of whether the ballistics report represents new and additional evidence which resets the 270-day speedy-trial clock under R.C. 2945.71(C)(2).

### Adams, Baker, Cooney, *and* Burrell

{¶13} The Ohio Supreme Court in *State v. Adams,* 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989), held that

> when new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory limitations period that is applied to the original charge.

{¶14} In *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1997), the Ohio Supreme Court clarified *Adams,* and announced the "new-and-additional-evidence" rule.

> In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment.

5

*Id.* at paragraph one of the syllabus.

{¶15} Baker was originally arrested and indicted for illegally selling prescription drugs from his pharmacy. *Id.* at 108. During a search of the pharmacy, police seized multiple business and financial records which they audited for evidence of additional crimes. *Id.* at 108-109. Nearly a year after the original arrest and indictment, police indicted Baker for drug trafficking and Medicaid fraud based on evidence obtained from the audits. *Id.* at 109. Baker moved to dismiss the indictments, arguing that the 270-day speedy-trial period began to run when he was arrested nearly a year earlier, and so the period had expired. *Id.*

{¶16} The court found that the second indictment was not subject to the speedy-trial time limits of the original indictment because the second indictment was based on new and additional facts of which the state had no knowledge at the time of the original indictment. *Id.* at 111. "Additional crimes based on different facts should not be considered as arising from the same sequence of events for purposes of speedy-trial computation." *Id.* The state could not have known of the trafficking and Medicaid fraud crimes until the audits were completed. *Id.* The state was given a new 270-day period, which began to run when the second indictment was issued on June 1, 1994, even though the police had completed the audits by September 15, 1993. *Id.* at 109, 111-112.

{¶17} In *State v. Cooney*, 124 Ohio App.3d 570, 706 N.E.2d 854 (1st Dist.1997), this court narrowed the applicability of the new-and-additional-evidence rule as it pertained to laboratory test results. Cooney was arrested on June 3, 1996, for driving under the influence in violation of R.C. 4511.19(A)(1). *Id.* at 571. That day, police drew his blood and sent it to the lab to determine his blood-alcohol

content. *Id.* The police did not receive the test results until August 28, at which time they charged Cooney with driving with a prohibited blood-alcohol content in violation of R.C. 4511.19(A)(2). *Id.* The nature of the charges against Cooney meant that he had to be brought to trial within 90 days after arrest. *Id.* At a September 23 hearing, more than 90 days after his arrest for the (A)(1) charge, Cooney moved to dismiss all charges due to a violation of his statutory speedy-trial rights. *Id.*

{¶18} The state argued that pursuant to *Baker,* the blood-alcohol test results were new and additional evidence of which the state had no knowledge at the time of the original indictment, and so the speedy-trial period on the (A)(2) charge did not begin to run until August 28, when it actually received the results of the blood-alcohol test. *Id.* at 573.

{¶19} Cooney's case was much simpler than Baker's. In *Baker* the police could not have known whether additional charges were appropriate until the "complex and time-consuming process" of auditing the financial records was complete. *Id.* The state knew all of the operative facts necessary to charge Cooney under R.C. 4511.19(A)(2) at the same time they charged him under R.C. 4511.19(A)(1). *Id.* For the same reason they had probable cause to believe Cooney was driving under the influence of alcohol, they had probable cause to believe Cooney was driving with a prohibited blood-alcohol content. *Id.* The test results merely represented proof of facts which the state already knew or should have known. *Id.* Therefore, this court held that the speedy-trial clock for the second indictment began to run at the time of Cooney's initial arrest. *Id.*

{¶20} In *State v. Burrell,* 1st Dist. Hamilton No. C-030803, 2005-Ohio-34, ¶ 1, 6, Burrell was originally indicted for burglary before being subsequently indicted

and convicted for murder and robbery. He argued that his speedy-trial rights were violated because his trial occurred over 270 days after he was indicted for burglary. *Id.* at ¶ 6. Burrell told police that he went into the victim's apartment, found her dead, and then stole some of her belongings. *Id.* ¶ 11. Burrell's codefendant told police that Burrell had also killed the victim. *Id.* But, the codefendant's story changed several times, and the police did not believe it to be reliable. *See id.*

{¶21} It was not until a jailhouse informant came forward, told police that Burrell had confessed to the killing to him, and provided police with details of the crime not known by the public, that police charged Burrell with murder. *Id.* ¶ 12. This court found *Baker* to be dispositive of Burrell's case because the second indictment for murder and robbery was based on facts not available to the state at the time of the first indictment. *Id.* at ¶ 13.

### Kinsey's Case

{¶22} We hold that a case-by-case analysis is necessary when applying the new-and-additional-evidence standard elucidated by *Baker.* Under the facts of Kinsey's case, we hold the ballistics report to be new and additional evidence.

{¶23} To convict Kinsey of felonious assault, the state is required to prove that Kinsey knowingly caused serious physical harm to the victim or caused or attempted to cause physical harm to the victim by means of a deadly weapon or dangerous ordnance. *See* R.C. 2903.11(A).

{¶24} At the hearing on Kinsey's motion to dismiss the indictment, the court heard from Detective Illing regarding what evidence the state possessed on September 18 and shortly thereafter, and why the state then decided to wait to charge Kinsey with felonious assault until July 24, 2017.

{¶25} Regarding why the state charged Kinsey with having a weapon while under disability and receiving stolen property on the same day as the shootout, Illing stated "due to Mr. Kinsey's history, and we had witnesses that saw him possess the weapon, that's why we charged him with the weapons under disability, and the weapon was stolen."

{¶26} With regard to whether the state knew Kinsey had fired the rifle, Illing testified:

Detective Illing: we found the assault rifle that was involved in the incident.

Prosecutor: Okay.

Detective Illing: It was identified as being possessed by Mr. Kinsey, from two individuals.

Prosecutor: Okay. That day, did you specifically know that that assault rifle was involved in the incident, or did you just know that Mr. Kinsey was carrying it?

Detective Illing: We knew that he possessed it.

Prosecutor: Okay.

{¶27} The court also asked Illing:

The Court: And one final question. On September 18th, 2016, were you able to tie – is there any evidence tying Mr. Kinsey to the shootings that occurred on 911 Jackson, or the intersection of Jackson and Douglas?

Detective Illing: The other individual that advised that – I don't want to give too much about the individual, but they witnessed him firing the weapon.

9

{¶28} Illing further testified that on the day of the shooting he did not feel the police had enough evidence to link Kinsey to the shooting of the victim. He stated that even if police determined that the type of bullet which hit the victim matched the type of bullet fired by that kind of rifle, they would not charge based on that.

{¶29} The following is all of the information known by police on September 18, 2016, about Kinsey's involvement in the shootout:

- One witness said he or she saw Kinsey retrieve the rifle from his car.

- Another witness told police that after the shootout Kinsey entered the house at 931 Adams Street with the rifle in his possession.

- Illing told the court that one witness told police he or she saw Kinsey fire the rifle during the shootout.

- Kinsey suffered a gunshot wound and had to go to the hospital.

- Police knew that a rifle of the same type as Kinsey's was fired during the shootout because they recovered shell casings consistent with the type of bullet which an M&P 15 fires. However, Kinsey's rifle was the only firearm recovered by police, and so it is unknown how many rifles were involved which could have fired that type of bullet.

{¶30} It appears as though the trial court felt bound by *Cooney* in finding that the ballistics report was not new and additional evidence. It stated that

> binding precedent of the First District in *Cooney* mandates the conclusion that the speedy-trial clock on the felonious assault charges commenced on the date of Mr. Kinsey's initial arrest.

\* \* \*

The legal proposition of *Cooney* is clear: laboratory results that were not known at the time of an original arrest or indictment (but are based upon evidence in the possession of law enforcement at that time) do not constitute new or additional facts by which a new speedy-trial clock may be triggered on charges subsequently brought.

{¶31} The trial court concluded that Kinsey's participation in the shootout and the injury to the victim were sufficient to charge Kinsey with felonious assault, at least under an aiding-and-abetting theory, and that "the laboratory report confirming the source of the slug simply solidified the evidentiary case against Mr. Kinsey."

{¶32} We do not give *Cooney* the same broad interpretation as the trial court. The very same evidence in *Cooney* which led to the charge for driving under the influence also provided ample evidence for the charge of driving with a prohibited blood alcohol content, and the lab results merely confirmed that Cooney was intoxicated.

{¶33} In Kinsey's case, the evidence which led the state to charge Kinsey with having a weapon while under disability and receiving stolen property (possession of the weapon), was not sufficient to charge him with felonious assault, because felonious assault requires proof that Kinsey did more than just possess the rifle. To achieve a conviction for felonious assault, the state must prove that Kinsey fired the bullet that hit the victim. Although the state possessed the bullet at the time of his original arrest, and all of the charges arose out of the same set of facts, the state did not know of the "fact" that Kinsey's rifle fired the bullet that hit the victim until they received the ballistics report. They suspected that to be the case, but as *Burrell*

11

demonstrates, a mere suspicion based on some evidence is not enough. *See Burrell,* 1st Dist. Hamilton No. C-030803, 2005-Ohio-34, at ¶ 11.

{¶34} *Cooney* involved one intoxicated person in a car, whereas Kinsey's case involved over 20 people in a shootout, with no evidence as to how many firearms could have caused the injury to the victim. The identity of the perpetrator was never at issue in *Cooney,* but that was the sole reason the state sought ballistics testing in Kinsey's case.

{¶35} If we follow the trial court's aiding-and-abetting theory for charging Kinsey to its logical conclusion, the state would have had to charge anyone it thought *might* be a suspect for the felonious assault if they were also charged that day for other crimes relating to the shootout, just to avoid violating the speedy-trial clock, even if it was not sure who the guilty party actually was.

{¶36} Prosecutors are under no duty to file charges as soon as probable cause exists, but before they believe they can prove a suspect guilty beyond a reasonable doubt. *United States v. Lovasco,* 431 U.S. 783, 791, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). Such a requirement could pressure prosecutors into engaging in premature and unwarranted prosecutions. *Id.* at 793. They are permitted to wait until they are satisfied that they will be able to establish the defendant's guilt at trial. *Id.* at 791.

{¶37} In *Burrell,* the court treated the jailhouse informant's statement as new and additional evidence that the police were not aware of when they first arrested Burrell. *Burrell,* 1st Dist. Hamilton No. C-030803, 2005-Ohio-34, at ¶ 13. The murder and robbery charges arose out of the same set of facts as the burglary charge, and the police had evidence, in the form of the codefendant's statement, that Burrell killed the victim. But, that evidence was likely insufficient to prove that

Burrell killed the victim due to the fact that the codefendant's statement changed several times. When the jailhouse informant came forward, police then had what they believed to be sufficient, reliable evidence of an additional fact—that Burrell had killed the victim.

{¶38} Similarly, the felonious-assault charge against Kinsey arose out of the same set of facts as the charges for having a weapon while under disability and receiving stolen property. Also, as discussed above, the state had some circumstantial evidence that Kinsey's rifle fired the bullet that hit the victim. But, similar to *Burrell,* that evidence may not have been sufficient to prove that Kinsey's rifle actually fired the bullet that hit the victim. It was not until the ballistics test results came back that the state had sufficient evidence of the additional "fact" that Kinsey's rifle fired that bullet.

### *Conclusion*

{¶39} Because the ballistics report represented new and additional evidence, the speedy-trial clock reset on July 24, 2017, which was the date the subsequent indictment was issued. Kinsey's statutory speedy-trial rights were not violated, and therefore, the trial court erred in dismissing the felonious-assault charge against Kinsey. The state's assignment of error is sustained. The trial court's judgment granting Kinsey's motion to dismiss on speedy-trial grounds is reversed, and this cause is remanded for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

MOCK, P.J., and BERGERON, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.