[Cite as *State v. Sanford*, 2021-Ohio-1619.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

ANDRE SANFORD

    Appellant

C.A. No.    18CA011308

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    16CR095062

DECISION AND JOURNAL ENTRY

Dated: May 10, 2021

PER CURIAM.

{¶1}    Defendant-Appellant Andre Sanford appeals the judgment of the Lorain County Court of Common Pleas. This Court affirms in part, reverses in part, and remands the matter for proceedings consistent with this decision.

I.

{¶2}    Around 5:00 a.m. on October 6, 2016, the victim, who was driving a motorcycle, was on his way to work. As the victim was stopped at a traffic light, Mr. Sanford, who was driving a car at nearly 60 m.p.h., crashed into the rear of the victim's motorcycle. The victim was thrown from his motorcycle across the intersection. The victim died at the scene. Mr. Sanford's vehicle continued through the intersection and struck a control box. Mr. Sanford and the passenger in the car, Mr. Sanford's brother, fled on foot. That same day, Mr. Sanford and his brother turned themselves into the police. Mr. Sanford told the police that, prior to the collision, he and his

brother had consumed some whiskey and smoked two "blunts" of marijuana. Mr. Sanford submitted to having his blood tested.

{¶3} On October 7, 2016, a complaint was filed in Elyria Municipal Court asserting that on October 6, 2016, Mr. Sanford, as "[t]he operator of a motor vehicle did knowingly fail to remain at the scene of an accident or collision and the operator knew the accident or collision resulted in the death of a person[.]" While Mr. Sanford and the State assert that Mr. Sanford was arrested on October 6, 2016, the entries in the record seem to indicate that Mr. Sanford may not have been arrested until October 7, 2016. There is no entry in the record reflecting an October 6, 2016 arrest date. Nonetheless, the record is clear that Mr. Sanford appeared in court on October 7, 2016 and was unable to post bond.

{¶4} On October 13, 2016, Mr. Sanford again appeared in court with counsel and waived his right to a preliminary hearing. He was bound over to the court of common pleas.

{¶5} On December 29, 2016, an indictment was filed in the court of common pleas charging Mr. Sanford with one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) (count one), one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) (count two), one count of failure to stop after an accident in violation of R.C. 4549.02(A) (count three), one count of driving under suspension or in violation of license restriction in violation of R.C. 4510.11(A) (count four), one count of operating a motor vehicle without a valid license in violation of R.C. 4510.12(A)(1) (count five), one count of operating a vehicle under the influence of alcohol and/or a drug of abuse in violation of R.C. 4511.19(A)(1)(a) (count six), and one count of operating a vehicle under the influence of a controlled substance or metabolite of a controlled substance in violation of R.C. 4511.19(A)(1)(j)(viii)(I) (count seven).

The indictment specified that the aggravated vehicular homicide charge involving R.C. 2903.06(A)(1)(a) was premised on a violation of R.C. 4511.19(A).

{¶6} On January 9, 2017, Mr. Sanford was arraigned on the charges and was also released on bond. On January 13, 2017, Mr. Sanford filed a motion to dismiss alleging violations of his right to a speedy trial. In the motion, Mr. Sanford argued that, because he had remained in jail from the time of his arrest until he posted bond on January 9, 2017, he was jailed for more than the time authorized by the relevant statute.

{¶7} The State responded in opposition to the motion. The State maintained that Mr. Sanford was only initially charged with failure to stop after an accident because "the investigation into the cause of the accident was ongoing and details were mostly unknown * * *." The State then discussed the additional investigation and testing that was conducted as well as when it received the results. The State argued that several of the charges were based upon facts not known at the time of the arrest, and, thus, those charges were subject to a different speedy-trial timeframe.

{¶8} A hearing was held on the motion, at which both sides presented argument. Subsequently, the trial court held another hearing, at which time the trial court stated its ruling on the record. The trial court granted Mr. Sanford's motion as to counts three, four, and five, but denied it as to counts one, two, six, and seven.

{¶9} Mr. Sanford then filed a motion to suppress, which was denied following a hearing. Mr. Sanford thereafter entered a no-contest plea to the remaining counts. The trial court sentenced Mr. Sanford to an aggregate term of eight years in prison. As some of the offenses were determined to be allied, Mr. Sanford was only sentenced on two of the counts.

{¶10} Mr. Sanford has appealed, raising four assignment of error for review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED WHEN IT "ACCEPTED" MR. SANFORD'S PLEA BECAUSE IT WAS WITHOUT AUTHORITY TO ENTER THE PLEA.

{¶11} Mr. Sanford argues in his first assignment of error that the trial court erred in accepting his plea because the trial court never elicited a plea from Mr. Sanford. In so doing, Mr. Sanford relies upon *State v. Kubisen*, 9th Dist. Lorain No. 16CA011065, 2017-Ohio-8781.

{¶12} In *Kubisen*, the Court stated that, "[t]he most basic premise of Crim.R. 11(C) is that a defendant enter a guilty (or no contest) plea and, thereafter, the court accept the plea." *Id.* at ¶ 6. Therein, this Court concluded that "a guilty plea cannot be accepted under Crim.R. 11 unless the defendant actually pleads guilty in court * * *." *Id.* at ¶ 10. However, in *State v. White*, 9th Dist. Lorain No. 18CA011305, 2019-Ohio-1159, ¶ 7, this Court concluded that *Kubisen* was "wrongly decided." In *White,* this Court noted that "Crim.R. 11(C) * * * does not speak with specificity to the form that 'a plea of guilty' must take." *Id.*

{¶13} Accordingly, to the extent Mr. Sanford relies upon *Kubisen*, his argument is misplaced. Further, contrary to Mr. Sanford's assertion, the record reflects that he did enter a plea at the plea hearing. At the plea hearing, the trial court asked Mr. Sanford, "And, although your attorney's entered a plea of no contest [o]n your behalf in this regard, do you also personally enter a plea of no contest?" Mr. Sanford responded, "Yes, sir."

{¶14} Given the foregoing, we cannot say that Mr. Sanford has demonstrated that the trial court committed error in accepting his plea. Mr. Sanford's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING MR. SANFORD'S MOTION TO DISMISS IN VIOLATION OF [R.C.] 2945.71 AND [] 2945.72 AS WELL AS

THE UNITED STATES AND STATE OF OHIO CONSTITUTION AS MR. SANFORD'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED.

{¶15} Mr. Sanford argues in his second assignment of error that the trial court erred in denying his motion to dismiss. Specifically, he disagrees with the trial court's conclusion that the four charges at issue were subject to a different speedy-trial calculation than that of the original charge.

{¶16} "When a trial court denies a motion to dismiss on speedy trial grounds, this Court reviews questions of law de novo, but considers whether the trial court's factual determinations are clearly erroneous." (Internal quotations and citations omitted.) *State v. Gall*, 9th Dist. Lorain No. 18CA011445, 2019-Ohio-4907, ¶ 5. "'The Supreme Court of Ohio has found that the statutory speedy trial provisions set forth in R.C. 2945.71 are coextensive with Ohio and federal constitutional speedy trial provisions.'" *State v. Purefoy*, 9th Dist. Summit No. 27992, 2017-Ohio-79, ¶ 8, quoting *State v. Gaines*, 9th Dist. Lorain No. 00CA008298, 2004-Ohio-3407, ¶ 9, citing *State v. O'Brien*, 34 Ohio St.3d 7 (1987), paragraph one of the syllabus.

{¶17} The parties do not dispute that Mr. Sanford remained in jail for over 90 days following his arrest on the charge of failing to stop after an accident. *See* R.C. 2945.71(C)(2)-(E). Thus, Mr. Sanford argues that the time for the State to bring him to trial expired. The State maintains that, at the time of Mr. Sanford's arrest, the investigation was ongoing and it was not until mid-November that the State received the toxicology report that allowed the State to indict Mr. Sanford on the two aggravated vehicular homicide counts and the two operating a vehicle while under the influence counts. Therefore, the State asserts that those four counts were subject to a separate speedy-trial timetable.

{¶18} The Supreme Court of Ohio has held that, "[i]n issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional

criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." *State v. Baker*, 78 Ohio St.3d 108 (1997), syllabus. In applying *Baker,* we have concluded that "[t]he State is not required to bring additional charges within the time period of the original indictment if the State did not have knowledge of the additional charges until performing investigations of later-seized evidence." *State v. Armstrong*, 9th Dist. Medina No. 03CA0064-M, 2004-Ohio-726, ¶ 7, citing *Baker* at 111. "[I]n construing the speedy-trial statutes, we must balance the rights of an accused with the public's interest in 'obtaining convictions of persons who have committed criminal offenses against the state.'" *Baker* at 111, quoting *State v. Bonarrigo*, 62 Ohio St.2d 7, 11 (1980).

{¶19} Here, the indictment charged Mr. Sanford with aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a). That provision provides that "[n]o person, while operating or participating in the operation of a motor vehicle, * * * shall cause the death of another * * *[a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]" The second count alleged that Mr. Sanford committed aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a), which states that "[n]o person, operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [r]ecklessly[.]" Additionally, Mr. Sanford was charged with two counts of operating a vehicle while under the influence of alcohol or drugs. One of the counts was a violation of R.C. 4511.19(A)(1)(a) and one was a violation of R.C. 4511.19(A)(j)(viii)(I). R.C. 4511.19(A)(1)(a) provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." R.C. 4511.19(A)(j)(viii)(I) states that:

> No person shall operate any vehicle * * * within this state, if, at the time of the operation * * * the person has a concentration of any of the following controlled

substances or metabolites of a controlled substance in the person's whole blood, blood serum or plasma, or urine that equals or exceeds any of the following: * * * The person is under the influence of alcohol, a drug of abuse, or a combination of them, and, as measured by gas chromatography mass spectrometry, the person has a concentration of marihuana metabolite in the person's urine of at least fifteen nanograms of marihuana metabolite per milliliter of the person's urine or has a concentration of marihuana metabolite in the person's whole blood or blood serum or plasma of at least five nanograms of marihuana metabolite per milliliter of the person's whole blood or blood serum or plasma.

{¶20} We conclude that, under the facts of this case, two of the four charges were dependent upon the toxicology report of Mr. Sanford's blood. It was not until the State received the toxicology report that the State knew that Mr. Sanford's blood contained substances at a level prohibited by R.C. 4511.19(A)(1)(j)(viii)(I). This information was not available to the State at the time the initial charge of failing to remain at the scene of an accident was filed. However, not only was the toxicology report necessary for the R.C. 4511.19(A)(1)(j)(viii)(I) charge (count seven), it was also probative of whether Mr. Sanford committed aggravated vehicular homicide as contained in count one. That charge of aggravated vehicular homicide under R.C. 2903.06(A)(1)(a) requires the death to be caused "[a]s the proximate result of committing a violation of *division (A) of section 4511.19 of the Revised Code * * *.*" (Emphasis added.) Here, the record supports that the State was relying on the R.C. 4511.19(A)(1)(j)(viii)(I) OVI charge to satisfy the requisite R.C. 4511.19(A) element listed in R.C. 2903.06(A)(1)(a). Given the broad language in the statute and the indictment, we cannot say that doing so was impermissible. As such, the facts contained in the toxicology report were not initially available to the State and were also necessary in prosecuting the crime alleged in count one.

{¶21} The same cannot be said for counts two and six, however, as they were not dependent upon the toxicology report. Instead, the State was initially aware of the facts necessary to prosecute both of those charges. Mr. Sanford was driving his vehicle nearly 60 miles per hour

when he crashed into and killed the victim, whose motorcycle was stopped at a traffic light. Mr. Sanford fled the scene, but later turned himself in and admitted to police that he was drinking whiskey and smoking marijuana prior to the accident. These facts would be sufficient to prosecute Mr. Sanford for the crimes alleged in counts two and six.

{¶22} First, R.C. 2903.06(A)(2)(a), the basis of count two, prohibits operating a motor vehicle and causing the death of another *recklessly*. Pursuant to R.C. 2901.22(C):

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶23} This Court recently affirmed a conviction for aggravated vehicular homicide—under R.C. 2903.06(A)(2)(a)—under a somewhat similar fact-pattern. *See State v. Glaze*, 9th Dist. Lorain No. 18CA011289, 2020-Ohio-53, ¶ 18 (rejecting a sufficiency challenge because the evidence demonstrated the offender acted recklessly when he drove at an excessive rate of speed, crashed into a stopped car at a traffic light, killing both victims, and then discarded drug paraphernalia which was later found by law enforcement). *See also State v. Schmidt*, 9th Dist. Medina No. 10CA0071-M, 2012-Ohio-537, ¶ 9 ("Recklessness may be inferred from a combination of excessive speed and the surrounding circumstances.").

{¶24} Next, R.C. 4511.19(A)(1)(a), the basis of count six, prohibits operating a vehicle while under the influence of alcohol or drugs. In recently affirming an OVI conviction—under R.C. 4511.19(A)(1)(a)—this Court acknowledged probative evidence of the offender's admission to police that he consumed alcohol that evening and also recognized that causing an accident may provide evidence of impairment. *State v. Miller*, 9th Dist. Summit No. 29469, 2020-Ohio-1209, ¶ 9, ¶ 14. Additionally, fleeing the scene of a crash may be indicative of a consciousness of guilt.

*See State v. Robertson*, 9th Dist. Lorain No. 13CA010395, 2014-Ohio-5389, ¶ 10, citing *State v. Nichols*, 9th Dist. Summit No. 24900, 2010-Ohio-5737, ¶ 11, and *State v. Taylor*, 78 Ohio St.3d 15, 27 (1997).

{¶25}  While a toxicology report would certainly be *probative* of whether someone acted recklessly in violation of R.C. 2903.06(A)(2)(a) and was driving under the influence in violation of R.C. 4511.19(A)(1)(a), the facts contained in the report would be by no means *necessary* in the prosecution of those offenses.  We recognize that "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt."  *United States v. Lovasco*, 431 U.S. 783, 791 (1977).  Under this particular fact-pattern, however, the State had ample evidence at the outset to prosecute and convict Mr. Sanford for violations of R.C. 4511.19(A)(1)(a) (count six) and R.C. 2903.06(A)(2)(a) (count two), without any additional reliance on the results of a toxicology report.  The State was therefore subject to the speedy-trial timetable applicable to the initial charge with respect to counts two and six and the trial court should have granted Mr. Sanford's motion to dismiss those two counts on speedy trial grounds.  *See, generally, Baker*, 78 Ohio St.3d 108.  The situation would be different for these two charges if laboratory analysis of a blood sample was required, if some new or additional information became known later, or if the charges resulted from different conduct.  *See Cleveland v. Evans*, 8th Dist. Cuyahoga No. 100721, 2014-Ohio-4567, ¶ 20.

{¶26}  Thus, this Court sustains Mr. Sanford's second assignment of error in part, and overrules it in part.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN DENYING MR. SANFORD'S MOTION TO SUPPRESS BECAUSE THE EVIDENCE SEIZED WAS THE FRUIT OF AN

UNCONSTITUTIONAL SEARCH AND SEIZURE IN VIOLATION OF DEFENDANT'S CONSTITUTIONAL RIGHTS.

{¶27} Mr. Sanford argues in his third assignment of error that the trial court erred in denying his motion to suppress. Specifically, he maintains that: (1) he was arrested for operating a vehicle while under the influence without probable cause; (2) he did not consent to the blood draw and/or was without authority to consent to the blood draw; and (3) the blood test was taken outside the specified time limits.

{¶28} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Thus, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8. "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶29} As to Mr. Sanford's challenges to the issue of consent, Mr. Sanford did not raise that issue in his motion to suppress or at the hearing on the motion. Accordingly, we conclude he has forfeited that issue and we decline to address it in this appeal. *See State Jones*, 9th Dist. Medina No. 17CA0070-M, 2019-Ohio-60, ¶ 15.

{¶30} Mr. Sanford also argues that he was arrested for operating a vehicle while under the influence without probable cause. He bases his argument on the fact that Officer Adam Garvin read Mr. Sanford the BMV 2255 form, which includes language indicating the person is under arrest for operating a vehicle while under the influence, and that neither Officer Garvin nor

Detective Daniel Sumpter noticed any signs that Mr. Sanford was impaired. Nonetheless, we reject his argument because we determine Mr. Sanford was not actually arrested for operating a vehicle while under the influence.

{¶31} "An arrest requires the existence of four elements: '(1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested.'" *State v. Barr*, 9th Dist. Summit No. 16822, 1995 WL 244156, *2 (Apr. 26, 1995), quoting *State v. Barker*, 53 Ohio St.2d 135 (1978), paragraph one of the syllabus. This Court has concluded that, "[t]he reading of the implied consent form, informing defendant that []he was under arrest, not only manifested the officer's intent to place defendant under arrest, but also constituted a seizure of h[is] person." *Barr* at *3. "Although completion of a BMV 2255 form does not always establish that a driver has in fact been arrested, it is evidence of an arrest." *Id.* Therefore, "[i]n the absence of contradictory evidence[,]" a trial court errs in determining that a defendant was not under arrest after the completion of a BMV 2255 form. *See id.*

{¶32} While the trial court did not issue findings of fact and conclusions of law in a judgment entry, it did so on the record after the suppression hearing. The trial court found that the vehicle operated by Mr. Sanford collided with the motorcycle driven by the victim at approximately 4:52 a.m. and that Mr. Sanford and his passenger left on foot shortly thereafter. Mr. Sanford turned himself into the Elyria Police Department around 6:15 a.m. Mr. Sanford was then taken to the hospital for medical treatment. The trial court determined that Officer Garvin was instructed by his superior to obtain consent through the BMV 2255 form. "Based upon [Officer Garvin's] testimony and the testimony of [Detective] Sumpter, [the trial court concluded] that Officer Garvin was not arresting the Defendant at the time that he read that form to him, but that

the form utilized advised Defendant he was under arrest for driving under the influence." The trial court noted that "[n]o other arrest-related activity * * * took place." "[The officers] didn't place Defendant under handcuffs. They didn't limit his movement about, although the medical care may have caused some limitations in his being able to move about the hospital. He was not removed from his bed or from the hospital. And, ultimately, within a short period of time, he was specifically advised by [Detective] Sumpter that he was not under arrest for driving under the influence."

{¶33} At the hearing, both Officer Garvin and Detective Sumpter testified. Both agreed that Mr. Sanford was cooperative with them. On the date of the accident, Officer Garvin was training on the day shift and had not yet made any arrests for operating a vehicle while under the influence. Officer Garvin spoke to Mr. Sanford at the police station and determined that he needed medical care. Mr. Sanford was then transported to the hospital. Mr. Sanford was not handcuffed. Officer Garvin was instructed by his superior to read the BMV 2255 form to Mr. Sanford, complete it, and obtain a consent for a blood sample. Officer Garvin did not remember Mr. Sanford exhibiting any signs of impairment. Officer Garvin read Mr. Sanford the form. Officer Garvin completed the form at approximately 6:55 a.m. Mr. Sanford was provided a copy of the form and signed it. The form states that the grounds for the "OVI" arrest were "Accident[.]" The form specifically advises the offender that he or she is under arrest for operating a vehicle while under the influence. Officer Garvin and Detective Sumpter signed the portion of the form that indicates it should only be completed on an "OVI Arrest/Physical Control Arrest[.]"

{¶34} Detective Sumpter testified that his purpose at the hospital was to interview Mr. Sanford in relation to Mr. Sanford leaving the scene of the accident. Prior to interviewing Mr. Sanford, and after the BMV 2255 form was completed, Mr. Sanford was asked to complete a

general consent form from the police department for a blood draw. That form does not mention arrest and instead indicates that the subject "g[ave] permission to obtain biological samples without a search warrant to the above named officers, voluntarily and without any threats or promises or coercion of any kind[.]" Mr. Sanford signed the form and the form indicates consent was granted at 7:00 a.m.

{¶35} Detective Sumpter testified that he told Mr. Sanford that they wanted a sample to check to see if Mr. Sanford was intoxicated but that "right now, [Detective Sumpter was] not arresting him for that." Detective Sumpter specifically told Mr. Sanford that he was not getting arrested for operating a vehicle while under the influence but that he may be charged at a later date.

{¶36} Mr. Sanford's blood was then drawn. Detective Sumpter then read Mr. Sanford the *Miranda* warning and interviewed him. Mr. Sanford subsequently had x-rays and was afterwards released from the emergency room. Upon his release from the emergency room, Mr. Sanford was placed in handcuffs and informed that he was being arrested for failing to stop after the accident and leaving the scene. Mr. Sanford was then charged with failing to stop after an accident. At that time, no charges for operating a vehicle while under the influence were filed.

{¶37} Given the record before us, we conclude that the trial court's factual findings outlined above are supported by competent, credible evidence. *Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Further, given the totality of the evidence, and notwithstanding the reading and completion of the BMV 2255 form, we conclude that Mr. Sanford was not arrested for driving while under the influence. Accordingly, and in light of Mr. Sanford's arguments, it does not matter whether officers had probable cause to arrest Mr. Sanford for operating a vehicle

while under the influence because we agree with the trial court that Mr. Sanford was not arrested for operating a vehicle while under the influence.

{¶38} Mr. Sanford additionally argues that the blood draw was taken outside the two-hour time limit set forth in R.C. 4511.192(A) and, therefore, the evidence was inadmissible. *See* R.C. 4511.192(A). Even assuming that we agreed that R.C. 4511.192(A) is related to the admissibility of evidence, the statute, by its plain language, clearly contemplates that the person was arrested for operating a vehicle while under the influence. R.C. 4511.192(A). R.C. 4511.192(A) states:

> Except as provided in division (A)(5) of section 4511.191 of the Revised Code, the arresting law enforcement officer shall give advice in accordance with this section to any person under arrest for a violation of division (A) or (B) of section 4511.19 of the Revised Code, section 4511.194 of the Revised Code or a substantially equivalent municipal ordinance, or a municipal OVI ordinance. The officer shall give that advice in a written form that contains the information described in division (B) of this section and shall read the advice to the person. The form shall contain a statement that the form was shown to the person under arrest and read to the person by the arresting officer. One or more persons shall witness the arresting officer's reading of the form, and the witnesses shall certify to this fact by signing the form. The person must submit to the chemical test or tests, subsequent to the request of the arresting officer, within two hours of the time of the alleged violation and, if the person does not submit to the test or tests within that two-hour time limit, the failure to submit automatically constitutes a refusal to submit to the test or tests.

{¶39} We have already concluded that Mr. Sanford was not arrested for operating a vehicle while under the influence and, thus, we conclude the time limit in R.C. 4511.192(A) is inapplicable to his situation. Instead, R.C. 4511.19(D)(1)(b), which expressly addresses the admissibility of evidence, provides, in relevant part:

> In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation. The three-hour time limit specified in this division regarding the admission of evidence does not extend or affect the two-hour time limit specified in division (A)

of section 4511.192 of the Revised Code as the maximum period of time during which a person may consent to a chemical test or tests as described in that section.

{¶40} As neither side disputes that Mr. Sanford's blood was collected prior to the expiration of the three-hour time limit set forth in R.C. 4511.19(D)(1)(b), we therefore conclude that the trial court did not err in denying Mr. Sanford's motion to suppress.

{¶41} Mr. Sanford's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED BY IMPOSING, CONTRARY TO LAW AND THE CONSTITUTIONAL PROHIBITIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT, WHICH ARE DISPROPORTIONATE WITH THE SENTENCES IMPOSED ON SIMILAR DEFENDANTS. [SIC.]

{¶42} Mr. Sanford argues in his fourth assignment of error that his sentence for aggravated vehicular homicide is disproportionate to other sentences imposed in the Lorain County Court of Common Pleas on similar offenders for the same crime and therefore violates the Eighth Amendment. Given this Court's resolution of Mr. Sanford's second assignment of error, this assignment of error has been rendered moot and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶43} Mr. Sanford's second assignment of error is sustained in part and overruled in part. Mr. Sanford's fourth assignment of error has been rendered moot. His remaining assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

THOMAS A. TEODOSIO
FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

CARR, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶44} "The key question in this case is whether all of the offenses at issue arose out of the same set of facts, or whether additional charges arose from new facts that were either not present at the time of the original arrest or not available to the [S]tate at the time of the original arrest and indictment." *State v. Mohamed*, 10th Dist. Franklin No. 08AP-960, 2009-Ohio-6658, ¶ 32. In other words, does the speedy trial limit on Sanford's initial charge of failure to stop after an accident control on the subsequent charges or does a new speedy trial period begin? I would hold that the speedy trial clock started over when Sanford was subsequently indicted on additional

charges because the State was not subject to the speedy trial time limits of the original arrest, as the subsequent charges were based on additional facts revealed through further investigation. *See State v. Baker*, 78 Ohio St.3d 108, 111(1996).

{¶45} As the majority lays out, the victim was tragically killed in the early morning hours of October 6, 2016, on Route 57 in Elyria, Ohio. The victim who was on his way to work was stopped at a red light when Sanford's car struck the victim's motorcycle from behind, causing the victim to be ejected onto Sanford's hood and then thrown across the intersection. Sanford and his brother, who was a passenger in the car, fled on foot from the scene without checking on the victim or calling 911. Sanford's stepfather ultimately talked the brothers into turning themselves in to the police around an hour and a half after the accident. At the police station, Sanford admitted he was driving and had struck the victim's motorcycle. He also indicated that his brother was going to call and report the car as stolen and Sanford talked him out of it because he did not want to face a stolen car charge, too. Police were skeptical of Sanford's story because his brother had a record and police were concerned that Sanford may have been lying as to being the driver in order to protect his brother. Sanford admitted to drinking whiskey and to smoking two blunts with his brother a few hours before the accident. After advising him of his *Miranda* rights and questioning him briefly, the police had him physically evaluated. He was then taken to the hospital for further examination.

{¶46} While at the hospital, Sanford was questioned by Elyria police. The officers testified at the suppression hearing that Sanford was cooperative but upset, crying sometimes. Despite Sanford admitting to drinking and smoking marijuana, the officers testified that he did not exhibit signs of being under the influence. He did not smell of alcohol, have glassy or blood shot eyes, or slur his words. The officers obtained his consent to a blood draw in order to perform a

toxicology screen. After they were notified that Sanford was being released from the hospital, Elyria police arrested him for failing to stop after an accident. The officers at the hospital were not involved in any further investigation of the car accident.

{¶47} Over the next two months Sanford remained in jail and an investigation was conducted into the accident. DNA was collected from the car's airbag and analyzed. The DNA results confirmed that Sanford was the driver of the car at the time of the accident. Police also received the toxicology report from Sanford's blood sample showing marijuana metabolites over the legal limit.

{¶48} Upon getting the results back, Sanford was indicted in December 2016 by the grand jury with one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) (count one), one count of aggravated vehicular homicide in violation of R.C. 2903.06(A)(2)(a) (count two), one count of failure to stop after an accident in violation of R.C. 4549.02(A) (count three), one count of driving under suspension or in violation of license restriction in violation of R.C. 4510.11(A) (count four), one count of operating a motor vehicle without a valid license in violation of R.C. 4510.12(A)(1) (count five), one count of operating a vehicle under the influence of alcohol and/or a drug of abuse in violation of R.C. 4511.19(A)(1)(a) (count six), and one count of operating a vehicle under the influence of a controlled substance or metabolite of a controlled substance in violation of R.C. 4511.19(A)(1)(j)(viii)(I) (count seven). The indictment specified that the aggravated vehicular homicide charge involving R.C. 2903.06(A)(1)(a) was premised on a violation of R.C. 4511.19(A). On January 9, 2017 Sanford was arraigned on the additional charges and released on bond. Sanford quickly filed a motion to dismiss all the charges alleging a violation of his speedy trial rights.

{¶49} The State filed a motion in opposition contending that Sanford was only initially charged with failure to stop after an accident because "the investigation into the cause of the accident was ongoing and details were mostly unknown * * *." The State then discussed the additional investigation and testing that was conducted as well as when it received the results. The State argued that several of the charges were based upon facts not known at the time of the arrest, and, thus, those charges were subject to a different speedy-trial timeframe. In support of its position, the State cited *State v. Henrick*, 9th Dist. Summit No. 24771, 2010-Ohio-877, ¶ 21, wherein this Court stated that, "in issuing a subsequent indictment, the [S]tate is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the [S]tate did not know of these facts at the time of the initial indictment." (Internal quotations, citations, and emphasis omitted.) *Id*.

{¶50} A hearing was held on the motion, at which only argument was presented.[1] No stipulations were entered into at the time of the hearing and no exhibits were admitted. Subsequently, the trial court held a second hearing, at which time the trial court stated its ruling on the record. The trial court granted Sanford's motion as to counts three, four, and five, but denied it as to counts one, two, six, and seven.

---

[1] Upon initial review of the record, this Court questioned whether an evidentiary hearing was necessary on Sanford's motion to dismiss in light of the lack of evidentiary materials or stipulations in the record at the time the trial court ruled on the motion to dismiss and in light of the arguments made. Both parties responded and maintained, for different reasons, that an evidentiary hearing was not required. At that time, Sanford also moved to supplement the record with the transcript of a second hearing at which the trial court issued its ruling on the motion to dismiss. That transcript had been inadvertently omitted from the appellate record. This Court granted the motion.

{¶51} To convict Sanford of aggravated vehicular homicide under count two of the indictment, the State had to prove beyond a reasonable doubt that Sanford recklessly caused the victim's death. R.C. 2903.06(A)(2)(a). A person acts recklessly "when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). Risk is defined as a "significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(7).

{¶52} Although I agree there was some evidence of reckless driving when Sanford was initially charged, I do not agree that there was "ample evidence" to charge and convict him. *See* Majority Opinion at ¶ 25. The police knew that Sanford struck the victim's motorcycle from behind, fled from the scene, and admitted to smoking marijuana and drinking alcohol at some point before the accident. Sanford was traveling at around 60 mph. However, there was no evidence before the trial court as to how excessive this speed actually was.[2] Further, "proof of excessive speed in the operation of an automobile is not, in and of itself, always sufficient to prove recklessness." *State v. Young*, 5th Dist. Morrow No. CA-925, 2002 WL 171864, *5 (Jan. 28, 2002).

{¶53} The Supreme Court has held "in issuing a second indictment against the defendant, the [S]tate was not subject to the speedy-trial time limits of the original indictment, since the subsequent charges were based on new and additional facts which the [S]tate had no knowledge of at the time of the original indictment. Additional crimes based on different facts should not be considered as arising from the same sequence of events for the purposes of speedy-trial

---

[2] When Sanford pled no contest, during the recitation of the facts, it was set forth that Sanford was driving 60 mph in a 50 mph zone. However, this was not before the trial court at the motion to dismiss stage.

computation." *Baker*, 78 Ohio St.3d at 110; *State v. McKinney*, 5th Dist. Delaware No. 11-CA-26, 2011-Ohio-3951, ¶ 29. "[T]he speedy-trial clock resets when the [S]tate brings new charges based on either (1) facts different from those supporting the original charges or (2) lack of knowledge, at the time the original indictment is filed, of the facts supporting the new charges." *State v. Parker*, 6th Dist. Lucas No. L-18-1238, 2020-Ohio-4607, ¶ 69. "[S]everal appellate districts have analyzed similar facts and repeatedly found that laboratory results that were not known at the time of the original indictment constituted 'additional facts,' which warranted the triggering of a new speedy trial clock." *Mohamed*, 2009-Ohio-6658, at ¶ 42. *See also* Judge Jennifer P. Weiler & Kevin P. Weiler, Sr., *Baldwin's Ohio Driving Under the Influence Law*, Section 12:10 (2020 ed.); *State v. Lekan*, 2d Dist. Montgomery No. 16108, 1997 WL 351287, *2 (June 27, 1997) (concluding a charge of violating R.C. 4511.19(A)(4) was dependent on results of a urinalysis that were not available at the time the original charges were filed); *State v. Riley*, 12th Dist. Clermont No. CA99-09-087, 2000 WL 745300, *2 (June 12, 2000) (determining that probable cause for arrest on possession charge did not arise until the results confirmed the substance was cocaine); *State v. Skinner*, 4th Dist. Ross No. 06CA2931, 2007-Ohio-6320, ¶ 2-3, 15-16; *State v. Clark*, 11th Dist. Portage Nos. 2001-P-0031, 2001-P-0033, 2001-P-0034, 2001-P-0057, 2001-P-0058, 2004-Ohio-334, ¶ 73 ("The [S]tate did not know of two important facts at the time of the original indictment, both of which are essential to a charge of drug possession. First, the analysis date of the white substance, determined to be cocaine, was January 3, 2001. Although the [S]tate may have had a good idea that the substance was cocaine prior to the analysis date, they did not know for sure until the substance was analyzed in January 2001. Moreover, the cocaine was found in Jelaketa Jackson's van. The [S]tate did not know whose cocaine it was. It could have been Jackson's, since she owned the van, or any of three individuals whom the police knew

were in the van on that morning, Clark, Robin Stewart, or Gregory Hawkins. It was not until Clark admitted that the cocaine was his at the first trial, that the [S]tate was aware of a key element of drug possession, ownership."); *State v. Wieland*, 12th Dist. Clermont Nos. CA2015-04-036, CA2015-08-067, 2016-Ohio-261, ¶ 13 ("In similar circumstances, this court has previously found that lab reports confirming the chemical makeup of a substance constitute new facts not available to the [S]tate at the time of the original arrest regardless of an officer's belief as to whether a pill was a controlled substance. *State v. Schuster*, 12th Dist. Clermont Nos. CA2015-05-040 and CA2015-05-041, 2015-Ohio-4818. The same analysis applies in our finding that lab reports confirming the blood alcohol level of an offender constitute new facts not available to the [S]tate at the time of the original arrest regardless of an officer's belief as to an offender's intoxication.").

**{¶54}** Here the toxicology report was not only necessary for the R.C. 4511.19(A)(1)(j)(viii)(I) charge as the majority concludes, it was also probative of whether Sanford was driving under the influence of marijuana, and, in turn, relevant to whether Sanford recklessly caused the death of the victim. *See State v. Hatfield*, 11th Dist. Ashtabula No. 2006-A-0033, 2007-Ohio-7130, ¶ 155. Sanford's mere admission to drinking alcohol and smoking marijuana would not indicate whether he consumed enough to be liable under the relevant statutes. *See State v. Wood*, 9th Dist. Wayne No. 18AP0011, 2019-Ohio-3985, ¶ 14 ("For better or worse, the law prohibits drunken driving, not driving after a drink.") (Emphasis, internal quotations, and citations omitted.). Moreover, it is presumed a driver is operating under the influence when he is driving over the legal limit of marijuana metabolites in his blood.

**{¶55}** "Prosecutors are under no duty to file charges as soon as probable cause exists, but before they believe they can prove a suspect guilty beyond a reasonable doubt." *State v. Kinsey*, 1st Dist. Hamilton No. C-180431, 2019-Ohio-4248, ¶ 36, citing *United States v. Lovasco*, 431 U.S.

783, 791 (1977). "Such a requirement could pressure prosecutors into engaging in premature and unwarranted prosecutions." *Kinsey* at ¶ 36, citing *Lovasco* at 793. "They are permitted to wait until they are satisfied that they will be able to establish the defendant's guilt at trial." *Kinsey* at ¶ 36, citing *Lovasco* at 791.

{¶56} Given the facts that the State did not possess at the time the initial indictment was filed, it was within the State's discretion to wait to file the remaining charges until it possessed the evidence, namely the toxicology report, that would "satisf[y] [it] that [it] [would] be able to establish [Sanford's] guilt at trial." *Kinsey* at ¶ 36. The toxicology report provided convincing evidence that Sanford's behavior was not just negligent, it was in fact reckless. It additionally cemented the idea that Sanford was under the influence of marijuana. Absent the toxicology report, which was not available at the time the initial indictment was filed, the State was not unreasonable in its hesitancy to pursue the remaining charges.

{¶57} Accordingly, I would conclude that, with respect to these four charges, the State was not subject to the speedy-trial timetable applicable to the initial charge. Therefore, the trial court did not err in denying Sanford's motion to dismiss.

{¶58} With respect to Sanford's fourth assignment of error, I would address it and overrule it. Sanford argues in his fourth assignment of error that his sentence for aggravated vehicular homicide is disproportionate to other sentences imposed in the Lorain County Court of Common Pleas on similar offenders for the same crime and therefore violates the Eighth Amendment.

{¶59} Sanford does not dispute that his sentence of eight years falls within the applicable range for a first-degree felony. *See* former R.C. 2929.14(A)(1); *see also State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, ¶ 21 ("[A]s a general rule, a sentence that falls within the terms

of a valid statute cannot amount to a cruel and unusual punishment.") (Internal quotations and citations omitted.). Instead, he argues that his sentence is disproportionate to sentences imposed on other similarly situated offenders. Essentially, he asserts that his sentence is not consistent with that of similar offenders.

{¶60} "R.C. 2929.11(B) provides that felony sentences shall be 'consistent with sentences imposed for similar crimes committed by similar offenders.'" *State v. Carmel*, 9th Dist. Summit No. 28463, 2017-Ohio-7589, ¶ 7, quoting R.C. 2929.11(B). "Consistency, however, does not necessarily mean uniformity. Instead, consistency aims at similar sentences." (Internal quotations and citations omitted.) *State v. Zaharie*, 9th Dist. Medina No. 09CA0077-M, 2010-Ohio-3542, ¶ 13. "[T]wo defendants convicted of the same offense with a similar or identical history of recidivism could properly be sentenced to different terms of imprisonment." *Carmel* at ¶ 7, quoting *State v. Babb*, 9th Dist. Summit No. 23631, 2007-Ohio-5102, ¶ 6. "Consequently, an appellant cannot establish, either at trial or on appeal, that his sentence is contrary to law because of inconsistency by providing evidence of other cases showing similarly situated offenders who received sentences that are different from his own sentence." *Carmel* at ¶ 7. "[A] consistent sentence is not derived from a case-by-case comparison; rather, the trial court's proper application of the statutory sentencing guidelines ensures consistency." (Internal quotations and citations omitted.) *Zaharie* at ¶ 13.

{¶61} Sanford has not argued that the trial court improperly applied the statutory sentencing guidelines, and, instead, focuses only on comparing his sentence to that of other defendants. Given our precedent, his argument is without merit. *See Carmel* at ¶ 7; *Zaharie* at ¶ 13.

{¶62} Accordingly, I would affirm the trial court's judgment.

APPEARANCES:

GIOVANNA V. BREMKE, Attorney at Law, for Appellant.

J. D. TOMLINSON, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.