NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-3107

THE STATE OF OHIO, APPELLEE, *v*. SANFORD, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Sanford*, Slip Opinion No. 2022-Ohio-3107.]

*R.C. 2945.71—Speedy trial—New charges against a defendant added after the defendant's arrest get a new speedy-trial period if at the time the initial charges were filed, the state did not have all the information necessary to bring the additional related charges.*

(No. 2021-0801—Submitted April 27, 2022—Decided September 8, 2022.)

APPEAL from the Court of Appeals for Lorain County,

No. 18CA011308, 2021-Ohio-1619.

_____

**DEWINE, J.**

{¶ 1} An Ohio statute, R.C. 2945.71, codifies the constitutional right to a speedy trial.  Generally, a person facing felony charges must be brought to trial within 270 days of his arrest, or 90 days if he is in custody.  Things get more complicated when additional charges are added after the person has been arrested.

Do the new charges get their own speedy-trial period, or does the clock for the new charges start ticking at the time of the initial arrest?

{¶ 2} The defendant in this case killed another driver in a car accident. The state initially charged him with one felony offense related to the accident, and he was held in jail on that offense pending indictment. When the grand jury returned an indictment, it included additional charges alleging that the defendant had been driving with a prohibited level of drugs in his system. These charges were based on toxicology results that had not been available at the time of the defendant's arrest.

{¶ 3} The question before us is whether the charges based on the drug-test results are subject to the same statutory speedy-trial period as the original charge or whether the test results constituted new information unknown to the state at the time of the defendant's arrest, such that the state is entitled to a new speedy-trial clock on those counts. We conclude that the test results were new information necessary to establish that the defendant operated a vehicle with a prohibited level of drugs in his system and thus the state is entitled to a new speedy-trial period for those charges. The court of appeals reached the same conclusion, so we affirm its judgment.

## I. Background

### A. *Sanford is indicted after killing a motorcyclist*

{¶ 4} In the early morning hours of October 6, 2016, Andre Sanford was driving his car at almost 60 miles an hour when he came upon a motorcycle that was stopped at a red light. Sanford blew through the light, striking the motorcycle from behind and killing its driver. His car then tore across the intersection and crashed into a traffic-light control box. Sanford and his brother, who was a passenger in the car, ran from the scene.

{¶ 5} The men turned themselves in a little over an hour later. Sanford admitted that he had been drinking whiskey and had smoked two "blunts" prior to

the collision. The police arrested Sanford and caused a blood sample to be drawn for testing.

{¶ 6} Sanford appeared before the Elyria Municipal Court the following morning on a single felony charge of failure to stop after an accident. *See* R.C. 4549.02. The case was subsequently transferred to the Lorain County Court of Common Pleas pending review by a grand jury. Unable to afford his $100,000 bail, Sanford remained in jail.

{¶ 7} Ohio's speedy-trial statute, R.C. 2945.71, requires that a person facing a felony charge be tried within 270 days of the person's arrest. R.C. 2945.71(C)(2). The time period is shorter for misdemeanors, but when a defendant faces both misdemeanor and felony charges, the longer period applies. R.C. 2945.71(B) and (D). An accused person is entitled to three days' credit for every day he is held in jail in lieu of bail on the pending charge. R.C. 2945.71(E). As a practical matter, then, a person who is being held in jail on a felony charge must be brought to trial within 90 days of his arrest.

{¶ 8} In the weeks after Sanford's arrest, the state proceeded with its investigation. Investigators swabbed the driver's side airbag to obtain a DNA sample, which ultimately confirmed that Sanford was driving the car at the time of the accident. Additionally, the state received results from the blood draw administered in the hours after the crash. The results indicated that Sanford had been driving with a prohibited level of marijuana metabolites in his system.

{¶ 9} Based on this evidence, the grand jury returned an indictment on December 29, 2016, charging Sanford with the following crimes:

| Count 1 | Aggravated vehicular homicide occurring as a proximate result of committing a violation of R.C. 4511.19(A)—R.C. 2903.06(A)(1)(a) |
|---------|-----------------------------------------------------------------------------------------------------------------------------------|
| Count 2 | Aggravated vehicular homicide premised on the offense of driving recklessly—R.C. 2903.06(A)(2)(a) |

| Count 3 | Failure to stop after an accident—R.C. 4549.02(A) |
|---------|---------------------------------------------------|
| Count 4 | Driving while under suspension—R.C. 4510.11(A) |
| Count 5 | Operating a vehicle without a valid license—R.C. 4510.12(A)(1) |
| Count 6 | Operating a vehicle while under the influence of alcohol or a drug of abuse—R.C. 4511.19(A)(1)(a) |
| Count 7 | Operating a vehicle while under the influence of alcohol or a drug of abuse and with a prohibited concentration of a marijuana metabolite—R.C. 4511.19(A)(1)(j)(viii)(I) |

{¶ 10} In Ohio, criminal charges for operating a vehicle while under the influence of alcohol or drugs ("OVI") fall into two main categories. The first relates to the offense of driving while impaired by alcohol or drugs, *see* R.C. 4511.19(A)(1)(a). The second category involves offenses based on the level of alcohol or drugs in the driver's body, *see* R.C. 4511.19(A)(1)(b) through (j), which are commonly referred to as "per se" violations. Sanford was charged with both impaired-driving and per se OVI offenses—Counts 6 and 7, respectively. And in Count 1, the state charged Sanford with aggravated vehicular homicide premised on an OVI offense.

{¶ 11} Sanford was arraigned on the indictment on January 9, 2017, and was released from jail on bond the same day. At that point, he had been held in jail for a total of 95 days.

### B. *The trial court dismisses some of the charges on speedy-trial grounds*

{¶ 12} Sanford promptly moved to dismiss the charges on the grounds that his speedy-trial rights had been violated. Sanford asserted that the 95 days that he had been held in jail on the initial charge applied to all the charges relating to the October 6 car accident. Therefore, he requested that the entire indictment be dismissed.

4

**{¶ 13}** The state conceded that the time to try Sanford on the failure-to-stop charge had expired and that that charge must be dismissed. The state further acknowledged that even though Sanford had not been charged with driving under suspension and driving without a valid license at the time of his arrest, the state had had all the information necessary to bring those charges at that time. Thus, the state acknowledged that the statutory period might also have expired with respect to those charges.

**{¶ 14}** The state maintained, however, that the two aggravated-vehicular-homicide counts and the two OVI counts should not be dismissed. In support of its position, the state relied on this court's decision in *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1997), which held that "in issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment," *id.* at 110. The state argued that the charges for aggravated vehicular homicide and OVI were based on facts that were not known to the state at the time Sanford was arrested on the failure-to-stop charge and as a result, the statutory speedy-trial period began anew with the filing of those charges.

**{¶ 15}** The trial court granted Sanford's motion to dismiss the failure-to-stop charge, as well as the counts alleging that he had been driving under suspension and without a valid license. But the court denied the motion as to the aggravated-vehicular-homicide and OVI charges, finding that the state had based these charges on the toxicology results demonstrating that Sanford had been driving with a prohibited level of marijuana metabolites in his blood. And because the test results were not available at the time of Sanford's arrest, the court concluded that a new speedy-trial clock began when the state filed additional charges based on those results.

**{¶ 16}** Sanford pleaded no contest to the aggravated-vehicular-homicide

and OVI counts. The trial court merged the two aggravated-vehicular-homicide offenses and the two OVI offenses for the purposes of sentencing. The state elected to proceed on Count 1, which charged aggravated vehicular homicide premised on an OVI offense, and Count 6, which charged OVI based on impaired driving.

{¶ 17} Following sentencing, Sanford appealed the denial of his motion to dismiss to the Ninth District Court of Appeals.

### C. The court of appeals concludes that additional charges should have been dismissed, but not those based on per se violations

{¶ 18} The Ninth District affirmed the trial court's judgment in part. The court of appeals determined that at the time of Sanford's arrest, the state did not have the information necessary to charge the per se OVI offense alleged in Count 7 of the indictment—namely, the toxicology results showing the level of marijuana metabolites in his blood. 2021-Ohio-1619, ¶ 20. The court of appeals also determined that the record supported the trial court's finding that the aggravated-vehicular-homicide charge alleged in Count 1 was premised on the commission of a per se OVI offense; it therefore concluded that the information contained in the toxicology report was necessary to prosecute that charge as well. *Id*.

{¶ 19} But the court of appeals reached the opposite conclusion with respect to the aggravated-vehicular-homicide charge premised on recklessness (Count 2) and the impaired-driving OVI charge (Count 6). The court explained that while the toxicology report might provide additional evidence in support of those charges, "the facts contained in the report would be by no means *necessary* in the prosecution of those offenses." (Emphasis in original.) *Id*. at ¶ 25. Rather, the court of appeals concluded, the state had "ample evidence" supporting those charges at the outset without any need for the toxicology results. *Id*. Based on its determination that the state had sufficient evidence at the time of Sanford's arrest to charge Counts 2 and 6, the court of appeals held that the statutory period that began with his arrest also applied to those counts and they should have been

dismissed. The court of appeals reversed the judgment in part and remanded the case to the trial court for further proceedings.

{¶ 20} Thus, in the wake of the Ninth District's decision, only two of the original seven counts in the indictment remain. Sanford appeals the appellate court's judgment affirming the denial of his motion to dismiss these two remaining charges. He asks us to decide whether toxicology results trigger a new speedy-trial period for charges premised on the commission of a per se OVI offense. We conclude that they do.

## II. Analysis

### A. *Our caselaw on subsequently filed related charges*

{¶ 21} It is helpful to begin by reviewing our caselaw applying the speedy-trial statute in situations in which related charges are subsequently added to a pending case.

{¶ 22} This court has consistently held that the state may not indefinitely extend the statutory speedy-trial period by continually filing additional, related charges. In *State v. Bonarrigo*, 62 Ohio St.2d 7, 402 N.E.2d 530 (1980), we concluded that any speedy-trial time expended on a charge that was dismissed without prejudice counts against the time for bringing the defendant to trial on a later-filed charge based on the same conduct. *Id*. at 11. A contrary holding, we explained, would permit the state to subvert the statutory time limits by repeatedly dismissing and refiling related charges. *See id.* at 10.

{¶ 23} We addressed a similar matter in *State v. Adams*, 43 Ohio St.3d 67, 538 N.E.2d 1025 (1989). The question in that case was whether a defendant's waiver of speedy-trial time with respect to a pending charge extended to a new charge filed after the waiver that was based on the same facts. We concluded that the waiver did not apply to the new charge, because the defendant did not know and was not advised that the waiver would apply to subsequent charges. *Id.* at 69. And because the second charge stemmed from the same set of facts that had given

rise to the initial charge, the statutory clock that started ticking with the filing of the first charge also applied to the second. *Id*. at 68.

**{¶ 24}** In reaching that holding, we adopted a rule that had been articulated by the Eleventh District Court of Appeals in *State v. Clay*, 9 Ohio App.3d 216, 459 N.E.2d 609 (11th Dist.1983): " '[W]hen new and additional charges arise from the same facts as did the original charge and the state knew of such facts at the time of the initial indictment, the time within which trial is to begin on the additional charge is subject to the same statutory [speedy-trial] period that is applied to the original charge.' " *Adams* at 68, quoting *Clay* at 216, citing *People v. Parker*, 59 Ill.App.3d 302, 305 375 N.E.2d 465 (1978), citing *People v. King*, 8 Ill.App.3d 2, 288 N.E.2d 672 (1972). The *Clay* court drew on the rationale of Illinois appellate-court decisions that an additional charge was "known" to police at the time the original charge was filed if the state had "all facts necessary" to support the additional charge at that time. *See Parker* at 305, citing *King* at 5.

**{¶ 25}** On the other hand, we have recognized that when new facts come to light after an arrest, additional offenses charged may be subject to a new speedy-trial period. In *Bonarrigo*, for instance, we rejected the defendant's argument that the expiration of speedy-trial time on a misdemeanor charge altogether barred the prosecution from subsequently charging related felony offenses. We noted that such a holding would impermissibly prevent the state from bringing new charges when "subsequent discovery revealed that a more serious offense than first anticipated may have been committed." *Id.*, 62 Ohio St.2d at 11, 402 N.E.2d 530.

**{¶ 26}** We developed that principle further in *Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883. *Baker* involved a prosecution against a pharmacist for various crimes. The pharmacist had initially been charged with drug-trafficking offenses for selling prescription drugs illegally. Relying on the evidence of individual drug sales, police obtained a search warrant for the pharmacist's business records. An audit of that information revealed additional instances of drug trafficking as well as

Medicaid fraud. The state therefore brought a second indictment charging these additional crimes.

{¶ 27} This court concluded that the second indictment was not subject to dismissal on speedy-trial grounds. We explained that because the state "could not have known" the information supporting the charges in the second indictment until the business-record audits were completed, the state was entitled to a new speedy-trial period starting from the time the second indictment was returned. *Id*. at 111-112. Thus, "[w]hen additional criminal charges arise from facts distinct from those supporting an original charge, or the state was unaware of such facts at that time, the state is not required to bring the accused to trial within the same statutory period as the original charge." *Id*. at 112.

{¶ 28} In short, we have made clear that a new speedy-trial clock does not start each time the state brings a new charge based on additional evidence that might strengthen the state's original case. But we have also said that the speedy-trial statute does not preclude the state from bringing new charges based on information that was not available to it at the time the original charges were filed. So the question is, how should a court determine whether subsequent charges are truly based on information not known to the state at the time the original charges were filed?

### B. *We affirm the court of appeals*

{¶ 29} Applying our past caselaw, we conclude that the Ninth District got it right. The proper inquiry is to consider whether at the time the initial charges were filed, the state had all the information necessary to bring additional related charges. *See* 2021-Ohio-1619 at ¶ 20-21, 25; *Baker*, 78 Ohio St.3d at 111, 676 N.E.2d 883 (state "could not have known" the facts necessary to support the new charges when the initial charges were filed); *King*, 8 Ill.App.3d at 5, 288 N.E.2d 672 (state had "all facts necessary" to proceed on new charges at the time the original charge was filed). If the state had the necessary information at the outset,

then the additional charges are subject to the same speedy-trial period as the original charges. If not, then the additional charges will trigger a new speedy-trial clock.

{¶ 30} The question whether the information available to the state at the time of the defendant's arrest was sufficient to support an additional charge will necessarily require a fact-dependent determination. We do not hold that test results supporting a new charge will always trigger a new speedy-trial clock for that charge. It is likely that situations will arise in which investigating officers have enough information to charge an offense based on other evidence, and a subsequent test result would merely be cumulative. Take for example, a defendant who offers cocaine for sale and is then arrested with a white powdery substance that the arresting officer is confident is cocaine. Test results may confirm that the substance is indeed cocaine, but they would not be necessary to charge the defendant. In such a case, the original speedy-trial period would still apply.

{¶ 31} But the situation presented in this case is different. A driver might admit to consuming marijuana, but he cannot admit to the amount of marijuana metabolites that are in his bloodstream. And law enforcement may suspect that a driver is over the legal limit based on the driver's conduct, but police officers cannot observe the amount of a substance in a person's blood. This is particularly true when, as here, the police are not able to observe the driver immediately after the accident. Thus, in many situations, law enforcement will not have all the information necessary to support a per se OVI offense prior to receiving test results establishing the level of the substance that was in the driver's system. In such cases, the toxicology results constitute new information unknown to the state at the time of the original charge.

### III. Conclusion

{¶ 32} The state did not have all the information necessary to go forward on charges premised on a per se OVI offense until it learned the amount of marijuana metabolites that had been in Sanford's blood. We therefore affirm the

10

judgment of the Ninth District Court of Appeals upholding the trial court's decision denying Sanford's motion to dismiss Counts 1 and 7 of the indictment, and we remand the case to the trial court for further proceedings.

Judgment affirmed

and cause remanded to the trial court.

O'CONNOR, C.J., and KENNEDY, DONNELLY, STEWART, and BRUNNER, JJ., concur.

FISCHER, J., concurs, with an opinion.

_____

**FISCHER, J., concurring.**

**{¶ 33}** I concur in the majority's judgment but write separately to raise an issue regarding Count 1 that was not briefed by the parties. I agree with the majority opinion that the proper inquiry is whether at the time the initial charges were filed, the state had all the information necessary to bring additional related charges. I also agree with the majority opinion's holding that in this case, the state did not have the information necessary to support the per se OVI offense charged in Count 7 until it received the toxicology results from the blood draw. Therefore, the toxicology results triggered a new speedy-trial period for the per se OVI charged in Count 7.

**{¶ 34}** However, a new speedy-trial clock does not start each time the state learns of additional evidence that might strengthen the state's case. *See State v. Baker*, 78 Ohio St.3d 108, 110, 676 N.E.2d 883 (1997); *State v. Adams*, 43 Ohio St.3d 67, 68, 538 N.E.2d 1025 (1989). As the majority opinion states, "[i]f the state had the necessary information at the outset, then the additional charges are subject to the same speedy-trial period as the original charges." Majority opinion, ¶ 29. That may be the situation for Count 1, the aggravated-vehicular-homicide charge at issue.

**{¶ 35}** Count 1 of the state's indictment alleges that appellant, Andre Sanford, committed aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a). That section of the Revised Code prohibits causing the death of another while operating a motor vehicle "[a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code." The state alleged two violations of R.C. 4511.19(A). The first was in Count 6, which alleged a violation of R.C. 4511.19(A)(1)(a), operating a vehicle while "under the influence of alcohol, a drug of abuse, or a combination of them." The second was in Count 7, the per se OVI charge discussed above.

**{¶ 36}** Unlike Count 7, Count 6 charges OVI based on impaired driving. A charge of impaired-driving OVI can be brought based on evidence of impairment other than a blood test or lab results. *See State v. Robinson*, 3d Dist. Allen No. 1-19-79, 2020-Ohio-4880. The Ninth District Court of Appeals determined in this case that, as an impaired-driving OVI charge, Count 6 was not dependent on the toxicology report and could have been brought before the state received the report. 2021-Ohio-1619, ¶ 21, 24-26. Therefore, the Ninth District held that the trial court should have dismissed Count 6 because the trial did not commence within the statutory speedy-trial period.

**{¶ 37}** That determination matters because Count 1, which charged aggravated vehicular homicide under R.C. 2903.06(A)(1)(a), requires only a violation of R.C. 4511.19(A) that proximately caused the death of another. Count 6 charged a violation of R.C. 4511.19(A). Therefore, the only additional fact required for the state to bring Count 1 with Count 6 is that the OVI proximately caused the death of another. But the state knew that Sanford caused the death of another at the time he was arrested. The toxicology report added no new information that was required to bring Count 1, so the report would not have triggered a new speedy-trial period for that count.

**{¶ 38}** The majority opinion and the Ninth District opinion conclude that the record shows that the state was relying on Count 7, not Count 6, to bring Count 1. And I agree with the majority opinion that under the theory the state used at trial, the state could not have brought Count 1 without the toxicology results. But Count 1 *could* have been premised on and brought with Count 6. It should not matter that it also could have been brought with Count 7, because for speedy-trial purposes, what matters is when it first could have been brought. *See Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883; *Adams*, 43 Ohio St.3d 67, 538 N.E.2d 1025; *State v. Clay*, 9 Ohio App.3d 216, 459 N.E.2d 609 (11th Dist.1983). The state's discovery of additional evidence to support a charge or additional evidence that would allow the state to bring the charge under a different theory should not restart the speedy-trial clock. Furthermore, charging Sanford with aggravated vehicular homicide as soon as the state had the information necessary to do so would not have locked the state into a theory premised on the impaired-driving OVI charge in Count 6. Once the state received the toxicology results, it could have changed its theory and proceeded with the aggravated-vehicular-homicide charge based on the per se OVI charged in Count 7.

**{¶ 39}** As the majority opinion states, "[i]f the state had the necessary information at the outset, then the additional charges are subject to the same speedy-trial period as the original charges." Majority opinion at ¶ 29. In this case, the state appears to have had the necessary information at the outset to bring Count 1 because, as determined by the court of appeals, the state knew enough to bring Count 6, and it knew Sanford had caused the death of another.

**{¶ 40}** While this remains an important issue that should be addressed in the future, this court does not decide cases based on arguments that were not raised or fully briefed by the parties. In briefing, Sanford's sole argument was that the state did not need the toxicology results to bring either Count 1 or Count 7, because the state already knew that Sanford had consumed alcohol and marijuana before the

accident. As described in the majority opinion, that premise is incorrect. Sanford does not argue that Count 1 could have been brought by relying on Count 6 instead of Count 7 as a predicate or that the speedy-trial analysis involving Count 1 is different from the analysis involving Count 7. It would be improper for this court to decide this case based on an issue that was not fully briefed. Nevertheless, it remains an important issue, and I write separately to make clear that this court has not implicitly decided this issue in this case.

––––––––––––––––––

J.D. Tomlinson, Lorain County Prosecuting Attorney, and Lindsey C. Poprocki, Assistant Prosecuting Attorney, for appellee.

Bremke Law, L.L.C., and Giovanna V. Bremke, for appellant.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Stephen P. Carney, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Russell S. Bensing, urging reversal for amicus curiae Ohio Association of Criminal Defense Lawyers.

––––––––––––––––––