[Cite as *State v. Mitchell*, 2022-Ohio-4646.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Earle E. Wise, Jr., P.J. |
| Plaintiff-Appellee | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 21CAC100052 |
| | : | |
| ASHLEY N. MITCHELL | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:           Appeal from the Delaware Municipal
                                   Court, Case Number 20TRC08193

JUDGMENT:                          AFFIRMED

DATE OF JUDGMENT ENTRY:            December 22, 2022

APPEARANCES:

For Plaintiff-Appellee:                      For Defendant-Appellant:

AMELIA BEAN-DEFLUMER                          TYLER W. DUNHAM
DELAWARE CITY PROSECUTOR                      98 N. Union Street
70 North Union Street                         Delaware, OH 43015
Delaware, OH 43015

*Delaney, J.*

{¶1} Appellant Ashley N. Mitchell appeals from the October 5, 2021, Judgment Entry of the Delaware Municipal Court. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} This case arose on September 11, 2019, around 9:38 p.m., when Sgt. King of the Ohio State Highway Patrol observed appellant operating a motor vehicle on Interstate 71 southbound near Mile Post 131. Appellant's rear license-plate lights were out, and King initiated a traffic stop, but appellant was slow to stop. King observed a marked-lanes violation when appellant exited 71 onto westbound 36/37.

{¶3} Appellant stopped in a gas station parking lot and King approached the vehicle, of which appellant was the sole occupant. King immediately noticed a strong odor of raw marijuana. Appellant's pupils were dilated, and her eyes were glassy and bloodshot. Appellant admitted she had marijuana in the vehicle and handed King a cigar wrapper containing a small amount of marijuana. Appellant stated she does not have a medical marijuana card. Appellant stated she last smoked marijuana that day around 8:00 p.m. when she left Chardon to come to Delaware, roughly an hour and a half before her contact with King.

{¶4} When asked if she was under the influence of anything, appellant responded "just a little weed." A search of appellant's purse yielded three THC cartridges and a small bag of marijuana. King asked appellant to submit to standardized field sobriety tests and she exhibited several indicators of impairment. Appellant rated herself a "5" on an impairment scale of 1 to 10.

{¶5} Appellant submitted a urine sample upon request.

{¶6} On September 11, 2019, appellant was arrested for O.V.I. pursuant to R.C. 4511.19(A)(1)(a), "impaired" O.V.I. [Count I]. She entered a plea of not guilty and waived time.

{¶7} On November 1, 2019, the OSHP lab issued its report on appellant's urine sample, which was positive for the THC metabolite.

{¶8} On September 14, 2020, King filed a citation charging appellant with a violation of R.C. 4511.19(A)(1)(j)(viii), "per se" O.V.I. [Count II].

{¶9} On November 4, 2020, appellant filed a motion to dismiss Count II, asserting a denial of her right to a speedy trial. Appellee responded with a memorandum contra on November 13, 2020. On December 1, 2020, the trial court overruled the motion to dismiss.

{¶10} In the meantime, appellee moved to consolidate Counts I and II for trial, and the trial court granted the motion.[1] The matter proceeded to trial by jury and appellant was found not guilty upon Count I and guilty upon Count II.

{¶11} Appellant now appeals from the judgment entry of conviction and sentence, incorporating the trial court's decision overruling her motion to dismiss.

{¶12} Appellant raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶13} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION TO DISMISS BECAUSE THE STATUTORY TIME LIMIT FOR BRINGING THE DEFENDANT TO TRIAL HAD ELAPSED."

---

[1] The case also included a criminal count consolidated with the traffic counts, but that case is not in the record before us.

**ANALYSIS**

{¶14} In her sole assignment of error, appellant argues the trial court should have granted her motion to dismiss on speedy trial grounds. We disagree.

{¶15} Speedy trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 383 N.E.2d 579 (1978); *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980).

{¶16} Our review of the trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. McKinney*, 5th Dist. Delaware No. 11-CA-26, 2011-Ohio-3951, ¶ 16, internal citations omitted. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. *Id.* However, we must independently review whether the trial court properly applied the law to the facts of the case. *Id.* Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state. *Id.,* citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996).

{¶17} Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

{¶18} R.C. 2945.71(B)(2) provides that a person who is charged with a first-degree misdemeanor must be brought to trial within 90 days from the date of the person's arrest on that charge.

{¶19} In the instant case, appellant was charged with Count I, impaired O.V.I., on September 11, 2019. In the meantime, the OSHP lab analysis was completed to determine whether prohibited amounts of marijuana were present in appellant's blood stream. The testing of appellant's urine sample was complete on November 1, 2019. Appellee then charged appellant with Count II, per se O.V.I., on September 14, 2020.

{¶20} It is undisputed that upon the filing of Count I, appellee suspected, but did not definitively know, that appellant had prohibited amounts of marijuana in her blood stream pursuant to R.C. 4511.19(A)(1)(j)(viii). *McKinney*, supra, 5th Dist. Delaware No. 11-CA-26, 2011-Ohio-3951, ¶ 20.  It is also undisputed that appellee filed Count II roughly nine months after the urine test result was available, before appellant was about to be tried upon Count I.

{¶21} Nevertheless, the issue raised by these facts is, when does the speedy-trial clock begin to run?  In *McKinney,* supra, at ¶ 30, we found that if the charges in the second complaint stem from additional facts which appellee did not know at the time of the arrest, appellee is afforded a new 90-day period, starting with the date the second complaint was filed. When additional criminal charges arise from facts distinct from those supporting an original charge, or appellee was unaware of such facts at that time, appellee is not required to bring the accused to trial within the same statutory period as the original charge under R.C. 2945.71 et seq. *Id.,* citing *State v. Skinner,* 4th Dist. Ross No. 06CA2931, 2007–Ohio–6320, additional citation omitted.

{¶22} Appellant argues the interests of justice should factor into the equation because appellee delayed filing Count II in the instant case. Appellant points out that in *McKinney,* appellee filed the original O.V.I. charge on September 23, 2010; appellee

received urine test results on November 15, 2010; and appellee filed a per-se O.V.I. charge on December 13, 2010. In the instant case, there was a delay of more than nine months between the receipt of the "new information," i.e., the urine test results, and the filing of Count II, and appellant argues we should treat this delay with "suspicion." Brief, 11.

{¶23} Nevertheless, appellee's delay in filing Count II is not the focus of our analysis. Appellant posed the issue created by this case as, when does the speedy-trial clock begin to run: when the state receives the new information, or when the state files the new charge? Appellant argues the ends of justice require the former. The Ohio Supreme Court has now definitively answered this question, though, and our focus is upon the latter. In *State v. Baker*, 78 Ohio St.3d 108, 676 N.E.2d 883 (1997), syllabus, the Ohio Supreme Court stated, "In issuing a subsequent indictment, the state is not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." The Court recently expanded upon this rationale in *State v. Sanford*, 2022-Ohio-3107, emphasizing that the speedy-trial clock runs anew at the inception of the latter charge, if the latter charge is based upon new information:

> In short, we have made clear that a new speedy-trial clock does not start each time the state brings a new charge based on additional evidence that might strengthen the state's original case. But we have also said that the speedy-trial statute does not preclude the state from bringing new charges based on information that was

not available to it at the time the original charges were filed. So the question is, how should a court determine whether subsequent charges are truly based on information not known to the state at the time the original charges were filed?

*State v. Sanford*, 2022-Ohio-3107, ¶ 28.

{¶24} The proper inquiry is whether at the time the initial charges were filed, the state had all the information necessary to bring additional related charges. *Id.*, ¶ 29. If the state had the necessary information at the outset, then the additional charges are subject to the same speedy-trial period as the original charges. *Id.* If not, then the additional charges will trigger a new speedy-trial clock. *Id.* Whether the information available to the state at the time of the defendant's arrest was sufficient to support an additional charge is a fact-dependent determination. *Id.,* ¶ 30.

{¶25} Appellant argues Sgt. King had every reason to believe the urine test would come back positive, and the urine test result is not "new information." We disagree. Count II requires knowledge of the amount of marijuana metabolites in appellant's system, a fact that was unknown until the urine test result was available.

{¶26} The Court further hypothesized with an example quite like the instant case:

But the situation presented in this case is different. A driver might admit to consuming marijuana, but he cannot admit to the amount of marijuana metabolites that are in his bloodstream. And law enforcement may suspect that a driver is over the legal limit based on the driver's conduct, but police officers cannot observe the amount of a substance in a person's blood. This is particularly true when, as here, the police are not

able to observe the driver immediately after the accident. Thus, in many situations, law enforcement will not have all the information necessary to support a per se OVI offense prior to receiving test results establishing the level of the substance that was in the driver's system. In such cases, the toxicology results constitute new information unknown to the state at the time of the original charge.

*State v. Sanford*, 2022-Ohio-3107, ¶ 31.

{¶27} Applying this rationale to the instant case, King had every reason to suspect appellant was under the influence of marijuana, including her admission thereto. But until the urine result was available, appellee did not have the facts necessary to support a per-se charge. The urine test results constitute new information unavailable to appellee at the time of the original charge, therefore Count II triggered a new speedy-trial clock upon the filing date of September 14, 2020. When appellant filed her motion to dismiss on November 4, 2020, 51 days had elapsed. The 90-day time limit had not yet expired, and the trial court properly denied appellant's motion to dismiss.

{¶28} We conclude appellee did not have all the information necessary to charge Count II until it learned the amount of marijuana metabolites in appellant's urine. *Id.* The trial court therefore properly denied appellant's motion to dismiss, and appellant's sole assignment of error is overruled.

## CONCLUSION

{¶29} The sole assignment of error is overruled, and the judgment of the Delaware Municipal Court is affirmed.

By: Delaney, J.,

Wise, Earle, P.J. and

Gwin, J., concur.